# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-KA-02040-SCT

*REGINALD JACKSON a/k/a REGINALD K.*
*JACKSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/29/2013 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | BRAD MARSHALL HUTTO |
| | GALE NELSON WALKER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID NEIL MCCARTY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:   LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., CHANDLER AND KING, JJ.**

**KING, JUSTICE, FOR THE COURT:**

¶1.     Reginald Jackson was convicted of armed robbery and sentenced to thirty years with five years suspended. On appeal, Jackson argues that the prosecutors' misconduct during opening statements and closing argument so infected the trial with unfairness that his right to due process was violated. Given the evidence of guilt, this Court finds that the prosecution's repeated misstatements of evidence and improper arguments, in the absence

of an objection, did not rise to the level of reversible error in this case. Jackson additionally argues that the State failed in its burden to prove the knife used in the robbery was a deadly weapon. Because it is well-established that the jury determines whether an item is actually a deadly weapon and because the jury was properly instructed on the issue, Jackson's contention that the State failed in its burden to prove the knife was a deadly weapon has no merit. Therefore, this Court affirms the decision of the trial court.

**FACTS**

¶2.    On December 9, 2011, Roger McDowell and Oliver Robinson, two Jackson State University students, were leaving the cafeteria on campus. McDowell and Robinson passed Reginald Jackson, the defendant, and Derrick Course, who asked McDowell and Robinson what the cafeteria was serving. Shortly beforehand, McDowell had received a phone call and answered his Apple iPhone. Both Robinson and McDowell testified that Course then pulled out a knife and demanded McDowell's phone. Robinson and McDowell attempted to get away and ran in opposite directions. McDowell testified that he slipped and that Jackson "started to beat up on" him. McDowell then testified that Course, who was still in possession of the knife, started back toward McDowell and Jackson. McDowell stated that he "just went ahead and gave him the phone" for fear of being stabbed.

¶3.    Robinson testified that he ran in the opposite direction. Robinson stated that, when he noticed that McDowell had fallen, he turned and started walking back toward McDowell. He testified that Jackson stated, "You can get it, too." Robinson turned back the other way and called the police. Robinson testified that there was no question that Course was the one

2

with the knife.

¶4. After failing to exit a locked courtyard gate on campus, Jackson and Course then entered a campus dormitory, Campbell College Suites North. Arron Richardson, a JSU student, testified that Course and Jackson ran into his dorm room while he was cleaning. Richardson stated that Course and Jackson told him to stay in the room because someone was looking for them. Richardson testified at trial that he saw Jackson give Course a phone and some money.[1] Course and Jackson asked Richardson to help them get off campus. After forty-five minutes to an hour, Course allowed Richardson to leave in order to get his truck. Richardson left and notified an officer who was searching the dormitory that Course and Jackson were hiding in his room.

¶5. Officer Alice Holly testified that Richardson approached her while she was searching the dormitory and told Officer Holly that Course and Jackson were in his room. Captain R.P. Andrews obtained a key to Richardson's dorm room and attempted to go inside. Officer Holly testified that, for about a minute or a minute and a half, every time Captain Andrews would turn the key, someone from the inside would lock the door back. Captain Andrews was able to gain access and found Jackson standing by the door, and Course hiding in the closet. Two cell phones, a pocket knife, and some money were found on Course. The police did not recover property from Jackson.

¶6. Course and Jackson were jointly indicted for armed robbery but were tried separately.

---

[1]This was the only testimony indicating that Jackson was in possession of the phone at any time. In the handwritten statement Richardson gave to the police after the incident, there was no mention of Jackson giving Course an iPhone or money. There was additionally no allegation in this case that Jackson or Course stole any money.

At trial, during the opening statement for the State, the prosecutor inaccurately made reference to a gun four separate times. The prosecutor first stated, "Reginald Jackson and his buddy Derrick Course, they stopped Oliver and Roger. One of them said, 'Hey, man, what they got in there to eat?' And before they knew it, a gun -- a knife was pulled." Shortly afterwards, the prosecutor again misspoke and stated, "Reginald Jackson and Derrick Course were in possession of a knife. They pulled the gun on Roger -- I'm sorry, ladies and gentlemen, they pulled the knife. There is no gun, forgive me. They pulled a knife on Roger and his friend Oliver." A third time the prosecutor said, without correction, "So they got two phones and a knife from Derrick Course, who had been acting in concert with Reginald Jackson, and they had taken the phone from Roger at gunpoint and they had beaten him." The last time the prosecutor mentioned a gun, she stated,

> But they will tell you the story, ladies and gentlemen, and the evidence will show Reginald Jackson is guilty of armed robbery. They took the phone from Roger McDowell at gun -- at knife point. They took his phone, they beat him and they ran away. And they had his phone when they were caught. Ladies and gentlemen, forgive me for slipping. There is no gun. It was a knife. And the evidence will show this man, Reginald Jackson, should be found guilty of armed robbery.

¶7. In closing argument, another prosecutor argued to the jury that "Roger, Oliver and Arron have done everything they can to convict this guy of armed robbery. Today they're asking you 12, and only you 12, to finish this, to find him guilty of armed robbery." The prosecutor additionally stated in closing that "Jackson State University has put forth all the evidence they can to convict this man of armed robbery. They caught him right after this happened with the evidence on him. They caught him red-handed." The defense counsel did

not object to these statements. A Hinds County Circuit Court jury convicted Jackson of armed robbery, and Jackson subsequently was sentenced by the trial court to thirty years with five suspended.

¶8.     On appeal, Jackson argues two issues which he suggests require the case to be reversed and remanded. First, Jackson argues the prosecutors' statements during opening and closing arguments violated Jackson's constitutional right to a fair and impartial trial. Second, Jackson contends that the State failed in its burden to prove that the pocket knife used by Course was a deadly weapon.

## ANALYSIS

### I. Whether Jackson's right to a fair trial was violated by the prosecutors' comments.

¶9.     Jackson argues that the prosecutors' comments so infected the trial with unfairness that Jackson was denied due process. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Caston v. State*, 823 So. 2d 473, 495 (Miss. 2002) (quoting *Sheppard v. State*, 777 So. 2d 659, 661 (Miss. 2000)). In all, Jackson claims that six statements by the prosecutors require reversal.

*A. Gun References*

¶10.    Jackson first argues that the prosecutor's four references to a gun during opening statements resulted in fundamental unfairness and cemented in the jury's mind that Jackson was a violent threat to society. Shortly after beginning the opening statement, the prosecutor

5

argued to the jury that "the evidence will show that Reginald Jackson entered the campus of Jackson State University and started a reign of terror on the victim in this case, whose name is Roger McDowell." The prosecutor then twice inaccurately stated that a gun was used in the robbery. The prosecutor corrected the first two references to a gun, but yet again stated a third time that the phone was taken from McDowell at gunpoint. The third time the prosecutor incorrectly accused Jackson of robbery at gunpoint, the prosecutor did not correct her misstatement. Overall, the prosecutor inaccurately mentioned a gun four times in opening statements. It is undisputed that no gun was involved in this case. Jackson argues that the repeated references to a gun cast Jackson as a menace to society and destroyed his right to a fair trial.

¶11.    Clearly it was error to repeatedly reference a gun in this case. However, the defense failed to object to any of these references. "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." *Havard v. State*, 928 So. 2d 771, 791 (Miss. 2006). This Court has long held that, even without the defendant attorney's objection, "unwarranted and improper remarks of a district attorney would warrant reversal where there was 'most extreme and intolerable abuse of his privilege . . . .'" *Randall v. State*, 806 So. 2d 185, 221 (Miss. 2001). While it was error to state four times that a gun was used in the alleged robbery, given the evidence of guilt, we cannot say that this case displays the "most extreme and intolerable abuse" of the prosecutor's privilege. Given the evidence of guilt, because the defense attorney failed to object to these statements, this Court declines to address this matter as plain error.

*B. Misstatement of Evidence*

¶12.   In closing argument, the prosecution argued to the jury that "Jackson State University has put forth all the evidence they can to convict this man of armed robbery. They caught him right after this happened with the evidence on him. They caught him red-handed." Despite the prosecutor's allegations, no testimony or evidence was introduced showing that Jackson was caught with any evidence. Thus, the prosecutor's argument was a misstatement of the facts. "A defendant is entitled to a fair and impartial trial before a jury not exposed to abusive arguments appealing to their passions and prejudices." *Flowers v. State*, 842 So. 2d 531, 554 (Miss. 2003). "Arguing statements of fact which are not in evidence or necessarily inferable from facts in evidence is error when those statements are prejudicial." *Ross v. State*, 954 So. 2d at 1002.

¶13.   The State argues that Jackson's claims of prosecutorial misconduct should be deemed procedurally barred for failure to object. Again, "[i]n extreme cases, a failure to object to questions which were violative of a constitutional right will not act as a procedural bar to consideration." *Ross v. State*, 954 So. 2d 968, 1002 (Miss. 2007) (citation omitted). While the prosecutor's statement was not a reasonable inference from the evidence, given the evidence of guilt, the prosecutor's misstatement was not extreme. Jackson's defense made it clear that Jackson was not found with any evidence on him. The State's witnesses also testified that Course was the one who was found with the cell phone and knife. While undoubtedly improper, we decline to hold that the prosecutors' comments were so extreme as to be addressed as plain error.

7

*C. "Finish this" Language*

¶14. Finally, Jackson argues that the "finish this" language used in closing improperly tilted the scales in the State's favor and again violated Jackson's right to a fair trial. In closing argument, the prosecutor stated:

> Ladies and gentlemen of the jury, I submit the State, Gale, Ivon and myself, we've done everything we can to prove this defendant is guilty of armed robbery. Jackson State University has put forth all the evidence they can to convict this man of armed robbery. They caught him right after this happened with the evidence on him. They caught him red-handed. Roger, Oliver and Arron have done everything they can to convict this guy of armed robbery. Today they're asking you 12, and only you 12, to *finish this*, to find him guilty of armed robbery. See, it's not just his day in court today. It's Roger's, it's Oliver's and Arron's.

(Emphasis added.) Jackson argues that "finish this" was analogous to the "do your duty" language that the Supreme Court has criticized.

¶15. In ***U.S. v. Young***, the United States Supreme Court stated:

> Nearly a half century ago this Court counselled prosecutors "to refrain from improper methods calculated to produce a wrongful conviction . . . ." ***Berger v. United States***, 295 U.S. 78, 88, 55 S. Ct. 629, 633, 74 L. Ed. 2d 1314 (1935). The Court made clear, however, that the adversary system permits the prosecutor to "prosecute with earnestness and vigor." ***Ibid.*** In other words, "while he may strike hard blows, he is not at liberty to strike foul ones." ***Ibid.***

***U.S. v. Young***, 470 U.S. 1, 7, 105 S. Ct. 1038, 1042, 84 L. Ed. 2d 1 (1985). The ***Young*** Court then held that, while it did not amount to plain error, the prosecutor erred when he encouraged the jury to "do its job," and stated that this kind of prosecutorial pressure did not belong in the administration of criminal justice. ***Id.*** at 18.

¶16. Further, Jackson argues that the "finish this" language the prosecutor used in this case is similar to the "send-a-message" argument that this Court has found constitutes reversible

8

error. In ***Payton***, the district attorney instructed the jury to "Send a message to these older, more mature, criminals. 'We are not going to let you ruin young people's lives like you have ruined these three people's lives, and all these lives you endangered in the process.'" ***Payton v. State***, 785 So. 2d 267, 270 (Miss. 1999). The defense did not make a timely objection. ***Id.*** This Court found that, standing alone, the district attorney's use of the "send a message" argument was reversible error and, additionally, that "[c]ombined with the prejudice resulting from the trial court's failure to sever, the improper argument resulted in an unfair trial in this case." ***Id.*** at 272.

¶17.    Two threshold questions are used to determine whether a send-a-message argument constitutes reversible error. ***O'Connor v. State***, 120 So. 3d 390, 399 (Miss. 2013). This Court first looks at whether the argument is procedurally barred because defense counsel failed to object to the statement at trial. ***Id.*** "However, even in the absence of a contemporaneous objection, we will review on appeal a claim that a prosecutor made an improper send-a-message argument 'if the argument is so "inflammatory" that the trial judge should have objected on his own motion.'" ***Id.*** (quoting ***Spicer v. State***, 921 So. 2d 292, 317 (Miss. 2006) (citations omitted). Second, this Court considers whether the defense counsel provoked the prosecution to make the challenged statement. ***Id.*** After considering the two threshold questions, the Court then must determine "(1) whether the remarks were improper, and (2) if so, whether the remarks prejudicially affected the accused's rights." ***Id.*** (quoting ***Spicer***, 921 So. 2d at 318).

¶18.    Urging the jury to finish what the prosecution started was improper and was akin to

the language this Court and the United States Supreme Court has warned against. However, given the evidence of guilt, we cannot say that the "finish this" language used in closing argument was so inflammatory that the trial judge should have objected on his own motion. Therefore, because the defense counsel failed to object, Jackson's argument is procedurally barred.

¶19. Jackson argues in the alternative that, cumulatively, these statements constitute reversible error. "The test to determine whether an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Dancer v. State*, 721 So. 2d 583, 590 (Miss. 1998). Therefore, in light of the high burden in this case, we decline even cumulatively to address Jackson's claims as plain error. The evidence of Jackson's guilt was overwhelming. Thus, it cannot be said that the natural and probable effect of the prosecutors' comment was to create unjust prejudice against Jackson which resulted in a verdict influenced by this prejudice.

¶20. Beyond question, the prosecutors' repeated misstatements of evidence and "finish this" argument in closing undoubtedly were improper. While we do not find reversible error under the facts of this specific case, prosecutors are now put on notice that such improper conduct is error. Because the State has now been warned, similar conduct by the prosecution is more likely to result in reversible error.

> **II. Whether the State failed to prove that a deadly weapon was used in commission of the robbery.**

10

¶21.    Jackson next alleges that Jackson's conviction must be reversed, because the State failed to prove that the knife used in the robbery was a deadly weapon. The armed robbery statute in Mississippi Code Section 97-3-79 reads:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery and, upon conviction, shall be imprisoned for life in the state penitentiary if the penalty is so fixed by the jury; and in cases where the jury fails to fix the penalty at imprisonment for life in the state penitentiary the court shall fix the penalty at imprisonment in the state penitentiary for any term not less than three (3) years.[2]

Miss. Code Ann. § 97-3-79 (Rev. 2014).

¶22.    In *Williams v. State*, this Court reiterated that "[w]hether a particular item is actually a 'deadly weapon' as contemplated by [the] statute, has long been held to be a question for the jury's determination." *Williams v. State*, 134 So. 3d 732, 734 (Miss. 2014). In this *Williams* case, the Court upheld the jury's finding that a possibly broken pellet/BB gun constituted a deadly weapon. *Id.* at 735. Jackson argues that in a separate *Williams v. State*, 37 So. 3d 717 (Miss. Ct. App. 2010), decided by the Court of Appeals, the State conceded that a pocket knife is not a deadly weapon. However, in that case, the defendant was convicted under Section 97-37-5, which deals with possession of a weapon by a felon. *Id.* at 719. This statute lists weapons, "bowie knife, dirk knife, butcher knife, switchblade knife . . .", that a convicted felon may not possess.[3] *Id.* The felon-in-possession statute does not

---

[2]Simple robbery under Section 97-3-73 does not require a deadly weapon.

[3]Mississippi Code Section 97-37-5 states:

mention or interpret the word "deadly."

¶23. Jackson argues that Section 97-37-5 and Section 97-3-79 should be read together to interpret them harmoniously. In *Harris v. State*, 2014 WL 4413454 (Miss. Ct. App. 2014), the Court of Appeals specifically found that the armed-robbery statute is not tethered to the felon-in-possession statute. *Harris v. State*, 2014 WL 4413454 (Miss. Ct. App. 2014). In affirming the defendant's armed-robbery conviction, the court also stated that "[t]he knife that the State submitted as evidence–whether it is a butcher knife, steak knife, paring knife, or some other kind of knife–could likely produce death or serious bodily harm to a human being if used as a weapon." *Id.*

¶24. The knife found on Course had a three-inch blade. Jackson argues that other jurisdictions have concluded that a knife with a three-inch blade is not inherently dangerous. Whether this knife was inherently dangerous in other jurisdictions is not the test. As stated above, whether the knife is considered a deadly weapon under the circumstances is strictly a question of fact for the jury to decide.

¶25. The jury was instructed as to the definition of a deadly weapon:

> The Court instructs the jury that a "deadly weapon" is defined as any object, article or means which, when used as a weapon under the existing circumstances is reasonably capable of producing or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used.

---

> It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States to possess any firearm or any bowie knife, dirk knife, butcher knife, switchblade knife, metallic knuckles, blackjack, or any muffler or silencer for any firearm . . . .

Miss. Code Ann. § 97-37-5 (Rev. 2014).

A knife with a three-inch blade, which ordinarily might not be considered deadly, when used in a robbery, may well be found to be a deadly weapon. The jury found that the knife, when used under the circumstances of the present case, fit the definition of a deadly weapon under Section 97-3-79. Whether the knife used in the robbery in this case constituted a deadly weapon was strictly a question of fact, and the jury was correctly instructed on the definition of a deadly weapon. Therefore, this issue has no merit.

### CONCLUSION

¶26. Given the evidence of guilt, we decline to address Jackson's allegations of prosecutorial misconduct as plain error. Additionally, the jury was properly instructed and determined that the knife found on Course fit the definition of a deadly weapon under Section 97-3-79. Thus, Jackson's contention that the State failed to prove that a deadly weapon was used has no merit. The conviction and sentence of the Hinds County Circuit Court are affirmed.

¶27. **CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY (30) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH FIVE (5) YEARS SUSPENDED, AND FIVE (5) YEARS OF POST-RELEASE SUPERVISION, AFFIRMED. APPELLANT IS GIVEN CREDIT FOR TIME SERVED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. LAMAR, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

13