KING, JUSTICE, DISSENTING:
 

 ¶ 75. Insufficient evidence exists to convict Terrell of timber theft; therefore, I would reverse and render his timber theft conviction. Further, the trial court abused its discretion by admitting the civil judgments against Terrell; therefore, I would reverse his remaining convictions and remand them for a new trial, in which Terrell could only be convicted of one conspiracy charge.
 

 1. Whether the trial court abused its discretion by admitting the two civil judgments into evidence under Rules 403 and 404.
 

 ¶ 76. On the second day of trial, the State attempted to call as a witness Clint Langley, the circuit clerk, to place into evidence two civil judgments against Terrell. Because Langley was not on the witness list, Terrell claimed unfair surprise, citing Rule 9.04. The State maintained that the civil judgments were against Terrell for the wrongful cutting of timber and it moved to place them into evidence under Mississippi Rules of Evidence 403 and 404(b) as evidence of motive, intent, plan, and identification. The prosecutor stated that "As to the heart of the case, they're denying that Terrell had anything to do with it, and we're showing that he did the same exact thing in three different counties in recent years." The court decided that Langley would not testify at that moment, and gave Terrell time to review the judgments.
 

 ¶ 77. Later that day, the court determined that it had given Terrell sufficient time to review the evidence and noted that the judgments were matters of public record. The court allowed Terrell an hour and a half to interview Langley. Terrell again objected based on unfair surprise. The State noted that "We're not getting into collections, Your Honor. We're here to indicate to the jury that's what this man does, is steal people's timber, and that we got two ..." (the court cut off the prosecutor at this point). Terrell also objected that the judgments were more prejudicial than probative and that the judgments were being introduced as evidence of prior bad acts to show Terrell's bad character.
 

 ¶ 78. The majority inexplicably claims that Terrell did not object based upon Rule 404(b) and only requested a limiting instruction. On page 323 of the transcript, Terrell's counsel specifically objected that "my understanding of the rule with respect to prior bad acts would be that this evidence will not be probative of the defendant's guilt on these two charges simply to show his bad character." Counsel then argued in the alternative, that if the trial court did allow the evidence in over his objection, that the court should give a limiting instruction, stating that he wanted a limiting instruction "if the Court sees fit[ ] to allow this testimony to come in[.]" The majority conflates these and blatantly punishes defense counsel for being thorough. It also appears to make new law that, if counsel objects, but then makes an argument in the alternative, counsel somehow has waived the original objection. This has never been the law in Mississippi, nor should it be. The majority's warping of the record to find waiver is inexcusable and will suppress zealous advocacy. Moreover, the trial court specifically addressed Rule 404(b) on page 324 of the transcript. The purpose of the contemporaneous objection rule is to allow the trial court to address and/or correct any issues.
 
 Walker v. State
 
 ,
 
 913 So.2d 198
 
 , 238 (Miss. 2005). The trial
 court addressed Rule 404(b), because it was raised by both parties; thus this is not a situation in which this Court would be finding the trial court in error for an issue it did not have the opportunity to address. Additionally, Terrell specifically raised Rule 404(b) in his motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial, with the specific objection found on page 195 of the record in this case. Even more telling is that the State does
 

 not
 

 argue that Terrell waived this issue; indeed, it argues the merits of the Rule 404(b) issue because the record makes clear that Terrell sufficiently objected based on Rule 404(b). I have grave concerns with the majority holding that arguments in the alternative effectively waive a proper objection, particularly in a criminal case in which we should be encouraging zealous advocacy.
 
 See
 

 Brown v. State
 
 ,
 
 890 So.2d 901
 
 , 912-13 (Miss. 2004) (placing the burden on counsel to request a Rule 404(b) limiting instruction);
 
 Rubenstein v. State
 
 ,
 
 941 So.2d 735
 
 , 760-61 (Miss. 2006) (failure to request a Rule 404(b) limiting instruction operates as a procedural bar to raising the issue on appeal).
 

 ¶ 79. Langley testified and the judgments were entered into evidence. The first document was a three page order from 2012 granting summary judgment against Terrell and awarding the plaintiffs monetary damages. It did not recite the facts of the case, nor did it state that the case was about timber. Indeed, timber is not even mentioned in the order. It awarded monetary damages to two plaintiffs, and also found that a warranty deed executed by one of the plaintiffs was a forgery, ordering the deed to be struck and confirming the original parties' interest in the land. It made no findings regarding who forged the deed or how it was forged. The second document consisted of a two-page default judgment against Terrell issued in 2009. The default judgment found that Terrell "wrongfully cut and removed timber from" the plaintiff's land, and awarded her a monetary judgment. During his testimony, Langley stated that he did not know any of the facts of the cases other than what was in the documents.
 

 ¶ 80. During the State's closing argument, the prosecutor referred to the judgments, noting "Do you know what this proves? This proves that he knew how to steal timber. That he likes to steal timber. That he knows how to make easy money by stealing timber." He also stated that "I don't know exact-all the details of this. I just got the judgment. This man loves to steal timber. That's what he does."
 

 ¶ 81. This Court reviews questions regarding the admissibility of evidence for abuse of discretion.
 
 Gore v. State
 
 ,
 
 37 So.3d 1178
 
 , 1183 (Miss. 2010). Moreover, this Court will not reverse a ruling on admissibility unless the abuse of discretion was prejudicial to the defendant.
 

 Id.
 

 ¶ 82. "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" but it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Miss. R. Evid. 404(b). However, even if the evidence is admissible, the court may exclude it "if its probative value is substantially outweighed by the danger of ... unfair prejudice." Miss. R. Evid. 403. "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged."
 
 White v. State
 
 ,
 
 842 So.2d 565
 
 , 573 (Miss. 2003).
 

 ¶ 83. The prosecution certainly gave lip service to "motive, intent, plan, and identity," yet, it failed to articulate
 
 how
 
 a default
 judgment for wrongful timber removal and an order granting summary judgment that mentions forgery without tying it directly to Terrell show any motive, intent, plan, or identity
 
 in the particular circumstance at hand
 
 . Indeed, the State indicated several times that the judgments were being introduced precisely to prove that Terrell acted in accordance with his character, stating that the judgments show that he had previously done "the exact same thing" and would show the jury that this is "what this man does, is steal people's timber." "[T]he prosecution may not introduce prior bad acts for the purpose of showing that the defendant has a propensity to engage in such conduct, that is, because he had done things like this before, he probably did it this time."
 
 Cole v. State
 
 ,
 
 126 So.3d 880
 
 , 885 (Miss. 2013).
 

 ¶ 84. The State's proffered excuse that the evidence shows intent, motive, or plan fails. The State did not show that the facts behind the two judgments were similar to the facts of the case at hand.
 
 See, e.g.
 
 ,
 
 Boggs v. State
 
 ,
 
 188 So.3d 515
 
 (Miss. 2016) (examining whether the other acts bore "a substantial resemblance to the offense charged as to be admissible under Rule 404(b)"). To show intent, motive, or plan to commit timber theft, the State ostensibly introduced the default judgment for wrongful timber removal. However, a civil default judgment for wrongful timber removal could be related to something as simple as mistaken property lines. Further, because it is a default judgment, the facts of the alleged act committed by Terrell were not proven to any reasonable degree of certainty. Indeed, to receive a default judgment, all that is
 
 required
 
 to be shown is that the defendant is in default. M.R.C.P. 55. No evidence is necessary, unless the trial court determines otherwise.
 

 Id.
 

 How such a default judgment shows intent, motive, plan, or identity is a mystery. The State also introduced an order granting summary judgment against Terrell that does not mention timber. The judgment does mention that a deed was a forgery, but gives no facts surrounding that forged deed, who forged it, or how it was forged. Moreover, the judgment was issued more than one year
 
 after
 
 the occurrences in this case. How this order shows intent, motive, plan, knowledge, or identity in the current case is also unclear. The majority argues that this judgment shows knowledge and intent, without explaining how a judgment from late 2012 with only bare facts included can show that Terrell had the requisite knowledge or intent to commit crimes in
 
 2011
 
 .
 
 [13]
 
 Especially when combined with the State's
 
 explicit statements
 
 indicating that this evidence was offered to prove conformity with Terrell's other actions, it appears this evidence does not fit an exception under Rule 404(b) and was improperly admitted.
 

 ¶ 85. The majority also cites
 
 Pollard v. State
 
 in support of its argument,
 
 [14]
 
 claiming that the case is "strikingly similar" and
 that the Court of Appeals affirmed under Rule 404(b) because it "found" no abuse of discretion. Maj. Op. at ¶ 57;
 
 Pollard v. State
 
 ,
 
 932 So.2d 82
 
 , 87-88 (Miss. Ct. App. 2006). Not only does this statement misrepresent the court's holding in
 
 Pollard
 
 , but
 
 Pollard
 
 is factually distinguishable. In
 
 Pollard
 
 , Duncan hired Pollard to cut some timber on his land.
 

 Id.
 

 at 84
 
 . Pollard cut some timber from the property adjacent to Duncan's, allegedly mistakenly.
 

 Id.
 

 Pollard offered to pay the landowner for the cut timber, but refused to pay the estimated value, offering her less money.
 

 Id.
 

 At trial, Duncan testified that "Pollard had not paid him for several loads of timber cut from his land."
 

 Id.
 

 at 87
 
 . The trial court overruled the defense's objection, stating that the evidence showed intent to steal under Rule 404(b).
 

 Id.
 

 at 87-88
 
 . The defense
 
 did not challenge this finding on appeal
 
 , nor did the Court of Appeals "hold" that the evidence passed muster under Rule 404(b). Instead, the defense challenged whether the trial court erred by failing to perform an on-the-record Rule 403 balancing.
 

 Id.
 

 That is the issue that the Court of Appeals addressed. Moreover, the exact landowner who had hired Pollard in the first place was testifying as to nonpayment for timber, thus, the facts were substantially similar to the case on trial, unlike the lack of facts found in the prior bad acts introduced in the case at hand.
 

 ¶ 86. Additionally, Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of ... unfair prejudice." M.R.E. 403. As discussed above, the facts underlying the civil judgments admitted were not even adduced. A factually sparse default judgment and a factually sparse order granting summary judgment have minuscule probative value. The danger of unfair prejudice vastly outweighed any probative value, as the introduction of the civil judgements could "render [Terrell] in the eyes of jurors liable, not because of what he did or did not do in the instant case, but because of what he has done or failed to do in the past."
 
 Mitchell v. State
 
 ,
 
 110 So.3d 732
 
 , 734 (quoting the comment to Mississippi Rule of Evidence 404 ). Indeed, the State explicitly used these judgments to argue to the jury that "This man loves to steal timber. That's what he does."
 

 ¶ 87. The admission of this evidence prejudiced Terrell. The damage was done when the jury was presented with inadmissible, prejudicial evidence.
 
 See
 

 Robinson v. State
 
 ,
 
 35 So.3d 501
 
 , 507 (Miss. 2010) (When the evidence was admitted, the "damage [was] done with respect to the jury being presented with inadmissible, prejudicial evidence[.]"). The evidence was adduced before Terrell even had the chance to put on a defense.
 

 Id.
 

 ;
 
 Hargett v. State
 
 ,
 
 62 So.3d 950
 
 , 954 (Miss. 2011). The bulk of the evidence against Terrell consisted of the contradictory, inconsistent testimony and statements of Terrell's alleged accomplices. This accomplice testimony "would not have had the same persuasive effect without" the evidence of the judgments.
 
 Hargett
 
 ,
 
 62 So.3d at 954
 
 . "Certainly it cannot be determined that a guilty verdict would have been reached without" the evidence of the civil judgments.
 

 Id.
 

 For this reason, this Court should reverse the four convictions against Terrell.
 
 [15]
 

 2. Whether the evidence was insufficient as a matter of law to convict Terrell of timber theft.
 

 ¶ 88. The critical inquiry regarding whether the evidence is sufficient to sustain a conviction is whether, when the evidence is weighed in the light most favorable to the jury's verdict, the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice."
 
 Lindsey v. State
 
 ,
 
 212 So.3d 44
 
 , 45 (Miss. 2017) (internal quotations omitted).
 

 ¶ 89. Timber theft is committed when a person "shall knowingly, willfully and feloniously take, steal and carry away from the lands of another any merchantable timber on the property of another."
 
 Miss. Code Ann. § 97-17-59
 
 (2) (Rev. 2014). Terrell argues that "carry away" requires that he physically "carry away" the timber, and no evidence was adduced that he committed the element of carrying away. Indeed, it is clear that Brushy Creek physically carried away the timber. The State does not argue that Terrell physically carried away the timber. Indeed, the indictment claims that "[b]y use of the artifice and false documents described herein, the Defendant did take, steal and carry away the merchantable timber." The language in the timber theft "elements" instruction was identical to that in the indictment. The trial court also rejected a "theory of the defense" instruction offered by Terrell that stated that the State had to prove that Terrell "both captured or took the physical possession of the subject merchantable timber and that he asported or carried away the subject merchantable timber by cutting or moving the same if only for a short distance." Thus, the question is whether a defendant can constructively "carry away" via false documents, or, phrased differently, whether Terrell accomplished the "carrying away" by conveying the timber to Brushy Creek.
 
 [16]
 
 This Court has found that "carrying away" requires an asportation, no matter how small.
 
 Harbin v. State
 
 ,
 
 402 So.2d 360
 
 , 361-62 (Miss. 1981) (grand larceny);
 
 see also
 

 Pollard
 
 ,
 
 932 So.2d at 86
 
 . Asportation is defined as "[t]he act of carrying away or removing."
 
 Asporation
 
 , Black's Law Dictionary (10th ed. 2014). "Carry away" is defined as "[t]o take or move."
 
 Carry away
 
 , Black's Law Dictionary (10th ed. 2014). "Asportation implies the termination of the owner's possession and the actual possession
 
 by the wrongdoer
 
 ." 52B C.J.S.
 
 Larceny
 
 § 34 (Dec. 2017 update) (emphasis added). "[A]sportation requires some movement of the seized goods, however
 slight, coupled with the intent to steal at the time the seized goods are moved."
 
 [17]
 
 50 Am. Jur. 2d.
 
 Larceny
 
 § 16 (Nov. 2017 update). While the conveyance of the timber in this case certainly eventually led to the timber's removal, the
 
 mere conveyance
 
 did not actually move the timber. The plain language of the "carry away" element in the statute clearly contemplates some physical movement of the property by the defendant or someone for whom he is criminally liable, and this is not how the indictment alleges the asportation was accomplished.
 
 See
 
 id.
 

 Indeed, the conveyance and the false documents did not create any movement of the timber whatsoever; that movement occurred later, via Brushy Creek. Moreover, "[i]t is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused."
 
 Coleman v. State
 
 ,
 
 947 So.2d 878
 
 , 881 (Miss. 2006). Thus, the interpretation of "carry away" must be strictly construed against the State and in favor of Terrell.
 

 ¶ 90. The majority cites several cases regarding the "innocent agent doctrine," which essentially stands for the notion that a defendant who effectuates an element of the crime through an innocent agent may be held liable for that innocent agent's actions. Yet, that is not the issue here. Indeed, because it is not the issue at hand, the State does not raise or make any sort of innocent purchaser argument in its brief; rather, the majority attempts to create this argument out of whole cloth on behalf of the State.
 
 [18]
 
 The issue is whether Terrell can "carry away" using false documents,
 
 not
 
 whether an innocent agent can accomplish the asportation. Whether documents can accomplish asportation is the issue in this case because the State specifically alleged in its indictment, and the court specifically instructed the jury in its instructions, that Terrell accomplished the carrying away "[b]y use of the artifice and false documents described herein." While such detail in the indictment may have been found to be surplusage, the State did not move to amend the indictment, took the case to trial, and had the court instruct the jury that Terrell accomplished the asportation by the use of false documents. Nothing in the indictment or jury instructions allowed for an innocent agent to accomplish asportation. "[T]he State handicapped itself through this indictment" by
 adding these details, which it must then prove.
 
 Richmond v. State
 
 ,
 
 751 So.2d 1038
 
 , 1046 (Miss. 1999) ;
 
 Lee v. State
 
 ,
 
 944 So.2d 35
 
 , 38-39 (Miss. 2006) ("
 
 Richmond
 
 remains authority in cases where the indictment contains surplusage which was not removed prior to trial."). The State imposed on itself, perhaps unnecessarily, the obligation to prove that Terrell accomplished the asportation solely with the use of false documents, and it must be held to this. We do not address in this case whether an innocent agent can accomplish an asportation. The majority now expands the indictment to allow Terrell to be convicted based on different details than those provided in the indictment.
 

 ¶ 91. Consequently, the evidence was insufficient to convict Terrell for the crime of timber theft. The trial court erred by denying Terrell's motion for directed verdict on this charge. When the evidence is deemed insufficient on any element of the offense, the appropriate remedy is to reverse and render.
 
 Edwards v. State
 
 ,
 
 469 So.2d 68
 
 , 70 (Miss. 1985).
 

 3. Whether the prosecutor's "send a message" final argument was so inflammatory and prejudicial that it amounts to reversible error.
 

 ¶ 92. When lawyer misconduct during closing arguments is alleged, this Court must determine "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created."
 
 Jackson v. State
 
 ,
 
 174 So.3d 232
 
 , 236 (Miss. 2015).
 

 ¶ 93. During his closing argument, the prosecutor stated
 

 When you go back there, you're going to make a decision maybe of not guilty. I think it should be guilty. But I don't think we should leave people like John [McLendon] and his wife out and abandon them. I think we need to protect those kind of people. I think if it's-if it's a young person that's getting his timber cut, I think we have a duty to do whatever we can to get the crooks off the street. We had to make a deal with Ricardo Hawthorne and LeArchie to get the guy of the scheme, of the scan, the flimflam who typed the deeds, who told Ricardo what he had to do, who he had to talk with. If we have to make a deal with them, we will.
 

 Terrell did not object contemporaneously. The prosecutor also told the jury to "Tell him you're not going to do this anymore Robert Patrick Terrell. We got our eye on you."
 

 ¶ 94. This Court examines two threshold questions to determine whether a "send a message" argument constitutes reversible error.
 

 Id.
 

 at 238
 
 . First, the Court determines whether the argument is procedurally barred for lack of a contemporaneous objection.
 

 Id.
 

 Yet, even if the defense did not object at trial, this Court will review a claim when it involves an argument so inflammatory that the trial judge should have objected on his own motion.
 

 Id.
 

 Second, the Court examines whether the defense provoked the prosecution to make the statement.
 

 Id.
 

 After analyzing the threshold questions, this Court then determines 1) whether the remarks were improper, and 2) whether the remarks prejudiced the defendant's rights.
 

 Id.
 

 ¶ 95. Terrell did not object to the prosecutor's statement. However, the defense did not invite the statements, and the statements were improper. Regarding whether the statements were so inflammatory that the trial judge should have objected, as well as prejudice, it is noteworthy that the admissible evidence against Terrell certainly cannot be described as overwhelming, so it is possible
 that the prosecutor's statements influenced the jury. I believe that the prosecutor's statements are highly problematic. They encompass
 
 both
 
 a "send a message" argument that this Court has strongly condemned
 
 and
 
 a "do your job" argument that the United States Supreme Court has strongly condemned.
 
 See
 

 Payton v. State
 
 ,
 
 785 So.2d 267
 
 (Miss. 1999) ("We have repeatedly condemned the 'send a message' argument and warned prosecutors accordingly.") ("[I]t is high time that the bench and bar take seriously our admonitions about such improprieties. Harmless error analysis should not be considered as a license to transgress the rules of fair argument that are repeatedly promulgated by this Court." (internal quotations omitted)) ("In the future, where sufficient evidence exists to show that a prosecutor is persistently ignoring our admonitions against use of the 'send a message' argument, we will not hesitate to sanction him with the costs of a new trial where necessary.");
 
 Jackson
 
 ,
 
 174 So.3d at 232
 
 ("[P]rosecutors are now put on notice that such improper conduct is error. Because the State has now been warned, similar conduct by the prosecution is more likely to result in reversible error.");
 
 United States v. Young
 
 ,
 
 470 U.S. 1
 
 ,
 
 105 S.Ct. 1038
 
 ,
 
 84 L.Ed. 2d 1
 
 (1985) ("do your job" arguments have "no place in the administration of criminal justice");
 
 Williams v. State
 
 ,
 
 522 So.2d 201
 
 (Miss. 1988) ("The issue which each juror must resolve is not whether or not he or she wishes to 'send a message' but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged.... When the prosecution wants to send a message they should employ Western Union. Mississippi jurors are not messenger boys."). This Court has cautioned time and time again that prosecutors using such inappropriate language will be reversed on appeal. Yet, this Court fails to follow through with its warnings, essentially giving prosecutors carte blanche to use inappropriate messages during closing argument.
 

 ¶ 96. For these reasons, I would reverse and render Terrell's timber theft conviction, and I would reverse and remand the remainder of his convictions for a new trial.
 
 [19]
 

 WALLER, C.J., AND KITCHENS, P.J., JOIN THIS OPINION.
 

 While it may be true that under Rule 404(b) the "act" may occur after the alleged crime in question, that does not change the fact that, especially combined with the sparse-to-nonexistent facts contained in the 2012 judgment and the fact that the State acknowledged that the judgments were offered to prove conformity therewith, the act occurring after the alleged crime in question makes it more difficult to show that it was introduced to show any sort of knowledge or plan.
 

 The majority also cites an unpublished Ohio Court of Appeals civil case in support of its argument.
 
 Shanklin v. Lowman
 
 ,
 
 2011 WL 290643
 
 , at *13 (Ohio Ct. App. Jan. 24, 2011). In that case, the Ohio Court of Appeals rested its decision on the fact that the defendant "fails to explain how the prior civil judgments against him were of a different nature than the current incident."
 

 Id.
 

 Clearly, placing such an onus on Terrell would violate his right not to testify.
 

 During closing argument, the prosecutor mentioned the judgments and stated "Do you know what this proves? This proves that he knew how to steal timber. That he likes to steal timber. That he knows how to make easy money by stealing timber.... I bet [the plaintiffs are] elderly .... I bet they're about the same age as Mr. And [sic] Mrs. McClendon [sic]." He then again mentioned the civil judgments and stated "I don't know exact-all the details of this. I just got the judgment. This man loves to steal timber. That's what he does." Clearly, these statements were inappropriate as they indicate that the jury should view the judgments as evidence of conformity with past bad acts.
 

 The trial court instructed the jury that the defendant need not commit every element of the crime himself. It instructed that an element may be "accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise." It further instructed that "if another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct." Brushy Creek was coined a victim in this case, and no evidence exists that Terrell directed Brushy Creek, acted in concert with Brushy Creek, joined with Brushy Creek, or had any sort of joint enterprise with Brushy Creek. Indeed, after Brushy Creek obtained the timber deed, Terrell and his co-defendants had no control over what Brushy Creek did or did not do. So based on the jury instructions, Terrell cannot be liable for Brushy Creek's action. Which brings this back to the State's sole argument, that Terrell accomplished the "carrying away" via false documents.
 

 This article points out that many states have eliminated the "carry away" requirement and created theft charges that merely require exercising control over the property, in contrast to the statute at hand.
 

 The State noted that Terrell's proposed jury instruction on the issue defined caption and asportation, and argued in its brief that this proposed instruction
 

 did not track the language of Terrell's indictment and failed to address the fact that Terrell fraudulently obtained John McLendon's land and sold it to the Brushy Creek Timber Company. Instruction D-8 seems to imply that Terrell could not be convicted for timber theft because he never physically moved the timber on John's land. Therefore, the
 
 most serious problem
 
 with D-8 is that it overlooks the fact that Terrell
 
 took the land through false pretenses and then conveyed
 
 John's timber to the Brushy Creek Timber Company. The elements of timber theft were more thoroughly and more accurately explained to the jury in Instruction Number 7, which explained in part, "(2) By use of the artifice and false documents described herein, Robert Patrick Terrell did take, steal, and carry away the merchantable timber on the property described in said false documents, which were owned by John McClendon, said timber, having a market value at that time of more than twenty thousand three hundred dollars ($20,300.00)." When D-8 is compared with Instruction Number D-7, it is clear that Number 7 sufficiently addressed the elements of timber theft and tracked the indictment, while D-8 failed to do so.
 

 (Emphasis added) (citations to record omitted).
 

 I agree with the majority that Terrell may only be convicted of one conspiracy charge.