# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-KA-00625-COA

**CHRISTOPHER RESHAD RICE A/K/A**         **APPELLANT**
**CHRISTOPHER RICE A/K/A CHRISTOPHER**
**RASHAD RICE**

**v.**

**STATE OF MISSISSIPPI**         **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/02/2024 |
| TRIAL JUDGE: | HON. MICHELLE DEAN EASTERLING |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/02/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., WESTBROOKS AND LASSITTER ST. PÉ, JJ.**

**WILSON, P.J., FOR THE COURT:**

¶1.     Following a jury trial, Christopher Rice was convicted of trafficking fentanyl, possession of methamphetamine, and possession of oxycodone.  On appeal, he argues that the State made an improper closing argument.  However, Rice failed to object to the State's argument at trial, and the evidence of Rice's guilt is overwhelming.  For the reasons explained below, Rice cannot show that the State's closing argument rises to the level of plain error or that his own trial counsel provided ineffective assistance by not objecting to the argument.  Therefore, Rice's convictions and sentences are affirmed.

**FACTS AND PROCEDURAL HISTORY**

¶2.   Courtney Hall testified that she had purchased drugs from Rice "hundreds" of times. On July 30, 2021, she bought what she believed to be heroin from Rice, "but it turned out to be fentanyl." After she used the drug, Hall was found unconscious and rushed to a hospital.

¶3.   At the hospital, Sergeant Jeff Edmondson of the Lowndes County Narcotics Task Force told Hall that "people . . . were dying" from fentanyl and asked her to help. Hall was "tired of being in [her] addiction and feeling out of control" and "wanted to help make a difference," so she agreed to participate in a controlled buy from Rice.

¶4.   Edmondson equipped Hall with a cell phone camera and gave her $120 to buy drugs from Rice. Edmondson recorded the serial numbers of the bills he gave Hall. Hall then met Rice at his apartment and gave him the money for "one gram of heroin." Hall testified that she used some of the drugs and gave the rest to Edmondson.

¶5.   Edmondson had been receiving tips that Rice was selling drugs since 2020. Officers had previously conducted traffic stops on persons who had just left Rice's apartment who "admitted that they just bought heroin from . . . Rice." In a short time period, Edmondson investigated a series of overdoses and deaths related to heroin and fentanyl, all of which "tied back to" Rice or another man. Hall was one of the people who overdosed.

¶6.   Edmondson testified that when he sent Hall to buy drugs from Rice, a surveillance team was outside "witnessing and videoing the whole thing." Edmondson was "two blocks away listening to a live feed." After the sale, Hall "broke down crying" and admitted she had used some of the drugs. Edmondson testified that he observed Rice selling drugs to Hall on

2

her cell phone video. However, the video quality was poor, and it was not played at trial.

¶7. A few hours after the sale, officers executed a search warrant on Rice's apartment. Inside the apartment, they found Rice and a variety of controlled substances. The $100 bill Edmondson had given Hall to buy drugs was in the pocket of Rice's shorts. Edmondson interviewed Rice after his arrest, and Rice confessed that the drugs were his. A recording of the interview was admitted into evidence and played at trial. Testing later identified the drugs found in Rice's apartment as forty-five grams of fentanyl, two dosage units of oxycodone, and four dosage units of methamphetamine.

¶8. Rice was indicted as a habitual offender and repeat drug offender for trafficking fentanyl (Count I), possession of methamphetamine (Count II), possession of oxycodone (Count III), and sale of fentanyl (Count IV). The case proceeded to a jury trial in the Lowndes County Circuit Court. At the close of the State's case-in-chief, the State dismissed Count IV. Rice made a motion for a directed verdict, which was denied, and rested without testifying or calling any witnesses.

¶9. The jury convicted Rice of all counts. The court sentenced Rice as a habitual offender and repeat drug offender to consecutive terms of eighty years, six years, and six years in the custody of the Department of Corrections. Rice filed a motion for judgment notwithstanding the verdict or a new trial, which was denied, and a notice of appeal.

## ANALYSIS

¶10. Rice argues that his trial was rendered unfair by an improper closing argument by the State. "Normally, 'the standard of review that appellate courts must apply to lawyer

3

misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created.'" *Ambrose v. State*, 254 So. 3d 77, 129 (¶162) (Miss. 2018) (brackets omitted) (quoting *Jackson v. State*, 174 So. 3d 232, 236 (¶9) (Miss. 2015)). "Even when a prosecutor has made an impermissible comment, this Court requires a showing of prejudice to warrant reversal." *Id.* (quoting *Outerbridge v. State*, 947 So. 2d 279, 286 (¶23) (Miss. 2006)).

¶11. However, Rice concedes that he failed to object to the alleged improper argument at trial. Because he "did not object to the alleged improper statements, the assignment of error has been waived and his arguments are barred procedurally on appeal." *Id.* at (¶163). Rice argues that we may still review the issue for "plain error," but "the plain-error doctrine is applied to closing arguments only when the substance of the statement is out of bounds for closing arguments." *Id.* at (¶161) (quoting *Boyd v. State*, 977 So. 2d 329, 337 (¶34) (Miss. 2008)). Moreover, we will reverse under the plain-error doctrine only "if the prosecutor's statement was *so inflammatory that the trial judge should have objected on his own motion*." *Id.* at 130 (¶165) (emphasis added) (quoting *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013)).

¶12. We also bear in mind that "attorneys on both sides in a criminal prosecution are given broad latitude during closing arguments." *Ahmad v. State*, 603 So. 2d 843, 846 (Miss. 1992). "[N]ot only should the State and defense counsel be given wide latitude in their arguments to the jury, but the court should also be very careful in limiting free play of ideas, imagery,

and personalities of counsel in their argument to jury." *Id.*

¶13. On appeal, Rice argues that the following argument by the State was improper:

[Hall] did her part. She did what she was supposed to do. She became a confidential informant. She said, I'm going to do my part. I'm going to give it to you, investigators, and let you do your part.

The investigators with the Lowndes County Sheriff's Department, they did their part. They did the undercover buy. They got the search warrant. They went to [Rice's] house. They got the drugs. They interviewed him. He confessed to possessing the drugs. They did their part. And then they said, you know what, we have done our part, we made the arrest; now, District Attorney office, I'm going to let you do your part.

And we did our part this week. We took the case file. We called the witnesses that were involved in this case, and we laid everything out for you this week. We told you who the defendant was. We told you what he was doing. We told you the drugs that he was possessing. We gave it all to you this week. And now I'm going to give it to you so that you can do your part. When you go back to deliberate, I ask you to find him guilty on all three counts.

¶14. Citing *Jackson*, 174 So. 3d at 237-38 (¶¶14-20), Rice argues that the prosecutor's argument was an improper "finish this" argument. *Jackson* involved an armed robbery on the campus of Jackson State University. In the State's closing argument in that case, the prosecutor argued:

Ladies and gentlemen of the jury, I submit the State, [the prosecutors], we've done everything we can to prove this defendant is guilty of armed robbery. Jackson State University has put forth all the evidence they can to convict this man of armed robbery. They caught him right after this happened with the evidence on him. They caught him red-handed. [The victims] have done everything they can to convict this guy of armed robbery. Today they're asking you 12, and only you 12, to *finish this*, to find him guilty of armed robbery. See, it's not just his day in court today. It's [their day in court].

*Id.* at 237 (¶14).

¶15. The Supreme Court held that the State's argument was improper because the State

5

may not urge the jury to "do its job" or "finish what the prosecution started." *Id.* at 237-38 (¶¶15, 18). However, the Court emphasized that the defendant did not object to the argument at trial. *Id.* at 238 (¶18). Applying the plain-error rule, the Court held that the argument was not "so inflammatory that the trial judge should have objected on his own motion." *Id.* Moreover, because "[t]he evidence of [the defendant's] guilt was overwhelming," the Court could not say "that the natural and probable effect of the [State's argument] was to create unjust prejudice against [the defendant] which resulted in a verdict influenced by this prejudice." *Id.* at (¶19). Therefore, the Court held that the State's argument was not reversible error. *Id.* at (¶¶19-20). But the Court also stated that "prosecutors are now put on notice that such improper conduct is error," warning that "similar conduct" would be "more likely to result in reversible error" in future cases. *Id.* at (¶20).

¶16. There is little to distinguish the closing argument in this case from the comments deemed improper in *Jackson*. Similar to *Jackson*, the prosecutor here argued that Hall, law enforcement, and the State had all done their respective "part[s]" and that it was time for the jurors to do their "part" by finding Rice guilty. As the Supreme Court held in *Jackson*, it is improper for the State to urge the jury to "do its job" by returning a guilty verdict. *Id.* at 237 (¶15) (stating that "this kind of prosecutorial pressure [does] not belong in the administration of criminal justice").

¶17. However, as in *Jackson*, Rice failed to object to these comments at trial, and the evidence of Rice's guilt was overwhelming. Rice sold drugs to Hall in a carefully monitored controlled buy. A few hours later, Rice's apartment was searched, the drugs at issue were

6

found in the apartment, and the $100 bill used in the controlled buy was found in the pocket of Rice's shorts. Rice then confessed that the drugs were his in a recorded interview that was admitted into evidence and played for the jury at trial. Because "[t]he evidence of [Rice's] guilt was overwhelming," we cannot say "that the natural and probable effect of the [State's argument] was to create unjust prejudice against [Rice] which resulted in a verdict influenced by this prejudice." *Id.* at 238 (¶19). Accordingly, the State's comments are not grounds for reversal or a new trial. *Id.*

¶18.    Rice also argues that if we do not find plain error, we should find that his trial counsel provided ineffective assistance of counsel by not objecting to the State's closing argument. "Generally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Ross v. State*, 288 So. 3d 317, 324 (¶29) (Miss. 2020) (brackets omitted). "This Court will address such claims on direct appeal when [1] the record affirmatively shows ineffectiveness of constitutional dimensions, or [2] the parties stipulate that the record is adequate and the Court determines that the findings of fact by a trial judge . . . are not needed." *Id.* (quotation marks omitted). We may also address such "claims on direct appeal when the record affirmatively shows that the claims are without merit." *Id.*

¶19.    To prevail on an ineffective assistance claim, Rice must show *both* (1) "that counsel's performance was deficient"—i.e., "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"—*and* (2) that he was prejudiced as a result—i.e., "that counsel's errors were so serious as to deprive

the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Rice "bears the burden of proving both prongs of *Strickland*." *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008). "If either prong is not met, the claim fails." *Havard v. State*, 928 So. 2d 771, 781 (¶8) (Miss. 2006).

¶20.    "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. In general, "the failure of counsel to make certain objections may fall within the ambit of trial strategy, and therefore may not give rise to a claim for ineffective assistance of counsel." *Morrow v. State*, 275 So. 3d 77, 84 (¶25) (Miss. 2019). Moreover, regardless of whether Rice's trial counsel should have objected, his ineffective assistance claim necessarily fails because he cannot show prejudice. As we have explained just above, the evidence of Rice's guilt was overwhelming. There is no "reasonable probability" that an objection to the State's closing argument would have somehow changed the result of Rice's trial. *Strickland*, 466 U.S. at 694. Accordingly, Rice's convictions and sentences are **AFFIRMED**.

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**