# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-KA-00774-SCT

*ROBERT PATRICK TERRELL a/k/a ROBERT P.*
*TERRELL a/k/a PATRICK TERRELL*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 04/08/2016 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| TRIAL COURT ATTORNEYS: | MORRIS SWEATT, SR. |
| | J. M. RITCHEY |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | J. M. RITCHEY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KAYLYN HAVRILLA McCLINTON |
| DISTRICT ATTORNEY: | HALDON J. KITTRELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; VACATED AND REMANDED IN PART - 01/04/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**EN BANC.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. In 2011, Robert Patrick Terrell—through his middleman Archie Nicholson—recruited Ricardo L. Hawthorne to record forged property deeds purporting to convey John McLendon's property to Hawthorne. Terrell and his coconspirators then used the forged deeds to fraudulently induce a timber company to buy the timber rights for $20,300 and,

unbeknownst to McLendon, harvest his timber. A jury found Terrell guilty of timber theft, conspiracy to commit timber theft, false pretenses, and conspiracy to commit false pretenses.

¶2. Because the evidence was sufficient to convict Terrell of both timber theft and false pretenses, we affirm those convictions and sentences. However, we agree with Terrell that the evidence supported only one conspiracy between Terrell, Nicholson, and Hawthorne, not two. We therefore vacate his two conspiracy sentences and remand the two conspiracy convictions to the trial court with instructions to dismiss—at the State's election—one of the conspiracy counts and resentence Terrell on the remaining conspiracy count.

**Background Facts and Procedural History**

### I. Indictment

¶3. In March 2013, a grand jury returned a twenty-count indictment against Terrell, Nicholson, and Hawthorne. The charges stemmed from their scheme to "sell" the timber on McClendon's property to Brushy Creek Timber Company. The State charged that Terrell, who worked in the timber industry and was familiar with property deeds, with Nicholson as the go-between, recruited Hawthorne to record forged warranty deeds purporting to convey McLendon's family property to Hawthorne. Hawthorne then sold these fraudulently obtained timber rights to the property to Brushy Creek for $20,300. Brushy Creek, which had no idea the timber deed was forged, then harvested and sold McLendon's timber.

### II. Trial

¶4.    Only Terrell was tried.  At the beginning of trial, the State dismissed sixteen counts and proceeded to trial on the remaining four counts—(1) timber theft, (2) conspiracy to commit timber theft, (3) false pretenses, and (4) conspiracy to commit false pretenses.

### A.    The State's Evidence

#### 1.    Investigators

¶5.    The State's first witness was State Trooper Demetrius Hawthorne (no relation to Ricardo Hawthorne).  In 2011, Hawthorne was a deputy sheriff in Jefferson Davis County. On May 28, 2011, McLendon reported to the sheriff's office that someone had been harvesting timber on his family's property.  After visiting McLendon's property himself and seeing the large equipment and cut timber, Deputy Hawthorne contacted the Department of Agriculture.

¶6.    Chris Newman, an investigator with the Department of Agriculture, also testified. Newman's investigation revealed two recorded deeds—one from John McLendon and one from Clarence McLendon—both conveying property to Ricardo Hawthorne.  Newman also found a third warranty timber deed conveying Hawthorne's timber rights to Brushy Creek.

¶7.    Newman showed the deeds to John McLendon, who maintained he never signed them. With the recorded deeds were two affidavits of heirship.  One affidavit was from someone named John Smith, who claimed to have known A.C. McLendon.  According to Smith, A.C. had died and left as his sole heirs John McLendon and Clarence McLendon.   The other affidavit was from someone named Ray Rodgers. Rodgers's affidavit claimed he had known Ellawese McLendon and that she had died, leaving as her sole heirs John McLendon and

Clarence McLendon. But Newman's investigation revealed this claim was false. In truth, Ellawese was still alive. In fact, Newman had talked to her the morning of trial. Newman also discovered that Clarence McLendon did not exist.

¶8. Newman ultimately approached Ricardo Hawthorne about the bogus documents. And Hawthorne confessed to forging them. Hawthorne explained that Terrell and Nicholson were also part of the scheme.

### 2. Victims

¶9. McLendon's testimony corroborated Newman's. He clarified that Ellawese was his wife of fifty years, not his mother, and that she was still alive and quite spry for her age. And he had never heard of Ray Rodgers, John Smith, or his purported brother, Clarence.[1] John McLendon never signed the warranty deed claiming to transfer his property to Hawthorne, which did not even list his correct phone number. In fact, the first time he ever met Hawthorne was in the sheriff's office, after the investigation started.

¶10. But McLendon did know Terrell. Terrell had approached McLendon in 2007 about buying some timber. McLendon said he had agreed to help Terrell out by selling below "cruise" price. After Terrell drafted a contract, a man who McLendon assumed was Terrell's business partner, Isaac Haynes, wrote McLendon a check for $20,000. The check bounced. And the deal fell through. After that, McLendon refused to have any further dealings with Terrell.

---

[1] While his father A.C. had died, John testified that A.C.'s heirs were John and John's four siblings—Helen McGee, Alton McLendon, Hugh L. McLendon, and Julius McLendon.

4

¶11.   The State also called representatives of Brushy Creek. In April 2011, forester Robert Newsome worked for Brushy Creek. Part of his job was to locate property owners willing to sell timber. If he found an interested owner, Newsome would "cruise" the owner's property to evaluate the timber for purchasing. Newsome testified he had talked to Terrell several times about the Hawthorne deal. "[Terrell] would call me to know what the hold up was on the money issue and stuff like that."

¶12.   Randy Davis owned Brushy Creek. He testified someone had called Brushy Creek's office about some prospective timber property. Davis had Newsome follow up with the lead. Newsome met someone at the land located between Joe Griffith Road and Hammond Road—where McLendon's property is located. Newsome told Davis the timber looked good. So Davis went out there and met with Hawthorne and another unidentified man.

¶13.   Hawthorne told Davis he had inherited the land "from his grandfather or something." Davis "cruised" the timber and offered $20,300. Hawthorne accepted. Hawthorne then hired an attorney to issue a title opinion. Based on this opinion, which relied on the forged deeds, Brushy Creek wrote Hawthorne a $20,300 check. Then, based on its contract with Hawthorne, Brushy Creek harvested the timber. Davis testified Brushy Creek sold the timber for a profit.

### 3.   Coconspirators

¶14.   Terrell's coconspirators were also called. Nicholson testified that he had worked for Terrell since 2005, taking down trees after Hurricane Katrina. At first, Nicholson said Hawthorne had approached him about needing some work, so Nicholson introduced

5

Hawthorne to Terrell.  But then the State confronted him with his prior statement he had given to Newman.  At that point, Nicholson admitted that it was Terrell who had asked him if he knew anyone who would be willing to sign some deeds.  So Nicholson called Hawthorne, who agreed to forge and record the bogus deeds for Terrell.  Nicholson also took Hawthorne to McLendon's land to meet the men from Brushy Creek.  Nicholson testified he was supposed to receive $5,000 from the purchase-price money but never did.  On cross-examination, Nicholson testified the State agreed to let him out of jail, where he remained on bond, and drop the charges if he testified against Terrell.

¶15.    Hawthorne testified he had been offered $2,000—$1,000 upfront and $1,000 after the deal closed—to record the false deeds.  Hawthorne said he did not draft the deeds, nor had he ever met the person who notarized them.  At first, he said only Nicholson put him up to it.  However, the State impeached him with a prior statement he had given, in which he implicated Terrell as the person who had organized the scheme.  Hawthorne insisted he had given the statement to try and "put it off on Pat Terrell."  Hawthorne also claimed that, after he received the $20,3000 check from Brushy Creek, he tried to give Terrell his cut of the money through a third person, but Terrell refused.  When asked pointedly if someone had paid him not to testify against Terrell, Hawthorne admitted Terrell had paid him several hundred dollars not to testify against him.

### 4.    Civil Judgments Against Terrell

6

¶16. As its final witness, the State called Clint Langley of the Jefferson Davis County Circuit Clerk's office. Langley sponsored the admission of several civil judgments against Terrell related to forged deeds and his wrongful taking of timber.

¶17. The State tried to call Langley earlier in the trial. But Terrell objected, arguing Langley had not been disclosed as a potential witness. *See* URCCC 9.04(I).[2] According to the State, Terrell could not claim any unfair surprise. The prosecutor explained he had just learned about the judgments the morning of trial. But Terrell's trial attorney had personally represented Terrell in these civil matters and was well aware of them. The State offered the judgments under Mississippi Rule of Evidence 404(b). The trial judge agreed they qualified as Rule 404(b) evidence but noted he would have to balance the judgments' admissibility with the potential prejudice. *See* M.R.E. 403.

¶18. Terrell did not dispute the judgments' admissibility under Rule 404(b). Rather, his objection was based solely on Rule 9.04. His attorney insisted the judgments had to be disclosed during discovery to avoid trial by ambush. The trial judge reasoned, "You're not surprised . . . if you were his lawyer." Still, the judge acknowledged Terrell's counsel needed time to further review the documents, citing ***Box v. State***, 437 So. 2d 19 (Miss. 1983). The judge ruled the State could not call Langley at that point in the trial but possibly could call Langley later.

---

[2] Terrell's trial predated this Court's July 1, 2017 adoption of the Mississippi Rules of Criminal Procedure. So the Uniform Rules of Circuit and County Court Practice controlled.

¶19.    At the close of its case-in-chief, the State recalled Langley. And this time, the judge permitted Langley to testify. Terrell's lawyer requested a mistrial under Rule 9.04, claiming he had insufficient time to defend against the judgments. Alternatively, he requested—in the event his motion was denied and the judgments admitted—a limiting instruction to prevent undue prejudice under Rule 403. The court denied his request for a mistrial. The judge found there was no unfair surprise, as Terrell's counsel had represented Terrell on two of the civil matters. Also, the judge had given Terrell's lawyer time to review the civil judgments *and* interview Langley. *See* URCCC 9.04.

¶20.    After the judge decided the evidence passed Rule 403 muster, the court admitted two judgments into evidence. One was a 2012 order granting summary judgment to several plaintiffs who had sued Terrell and his timber company for forging deeds with their signatures and causing them more than $10,000 in damages. The other was a 2009 judgment ordering Terrell to pay $40,000 for wrongfully cutting timber from one hundred acres of land in Jefferson County belonging to someone else.

¶21.    At the end of trial, the judge gave a limiting instruction. He specifically instructed the jury it could consider the judgment as evidence of Terrell's knowledge and intent but not as "proof of guilt of the charges for which he is presently on trial."

### B.    Defense

¶22.    At the close of the State's case, Terrell moved for a directed verdict, which was denied. Terrell rested without calling any witnesses.

### III.    Conviction

8

¶23. The jury found Terrell guilty on all four counts. He was sentenced to five years' imprisonment for timber theft and five years for conspiracy to commit timber theft. He was also sentenced to ten years for false pretenses and five years for conspiracy to commit false pretenses. The court ordered all sentences to run consecutively. In addition to imposing $25,000 in fines,[3] the court also ordered Terrell to pay McLendon $97,921.64 in restitution.

¶24. The trial judge denied his post-trial motion for judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial. Terrell now appeals to this Court.

## Discussion

### I. Motion for Directed Verdict and JNOV

¶25. On appeal, Terrell argues the trial court wrongly denied his motions for directed verdict and JNOV. Both motions challenged the sufficiency of the State's evidence.

¶26. When reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State. And we ask whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005).

#### A. Accomplice Testimony

¶27. Terrell casts the testimony of his coconspirators Nicholson and Hawthorne, not in a light most favorable to the State, but in an *unfavorable* light. He suggests their testimony was "uncorroborated, unreasonable, self-contradictory and substantially impeached." Thus, he argues, it was insufficient as a matter of law to convict him.

---

[3] Terrell was fined $5,000 for timber theft, $5,000 for conspiracy to commit timber theft, $10,000 for false pretenses, and $5,000 for conspiracy to commit false pretenses.

¶28.    Usually, uncorroborated testimony may sustain a conviction.  But we have held this general notion inapplicable when "testimony is unreasonable, self contradictory or substantially impeached."  *Osborne v. State*, 54 So. 3d 841, 846 (Miss. 2011) (citing *Ballenger v. State*, 667 So. 2d 1242, 1253 (Miss. 1995)).  Terrell's problem is that he fails to show Nicholson's and Hawthorne's testimonies were uncorroborated—let alone so unreasonable, self-contradictory, or substantially impeached that they were insufficient as a matter of law to support his conviction.

¶29.    Hawthorne's testimony corroborated Nicholson's and vice versa.  *See id.* at 847 (requiring "[o]nly slight corroboration of an accomplice's testimony").  Yet Terrell contends one accomplice's testimony cannot corroborate another's.  As support, he cites *Williams v. State*, 32 So. 3d 486 (Miss. 2010).  But this is not what *Williams* says.  Rather, *Williams* explained "that testifying accomplices cannot corroborate each other sufficiently *to obviate the necessity of a cautionary jury instruction*."  *Id.* at 492 (emphasis added).  And here, the trial court gave a cautionary instruction on accomplice testimony.  So *Williams* does not apply.  Further, both Nicholson's and Hawthorne's testimony was corroborated in part by Newsome, who testified he spoke several times with Terrell about the Hawthorne/Brushy Creek deal.  He too connected Terrell to this venture.  *See Osborne*, 54 So. 3d at 847.  The State also presented other circumstantial evidence—namely, McLendon's 2007 dealing with Terrell and the civil judgments—that supported both accomplices' implicating Terrell as the mastermind behind the scheme to use forged deeds to steal timber.[4]

---

[4] This Court has held that a jury may infer a conspiracy from the circumstances, "acts[,] and conduct of the alleged conspirators." *Morgan v. State*, 741 So. 2d 246, 255

10

¶30. As to Terrell's claims that Nicholson's and Hawthorne's testimony was contradictory and substantially impeached, this goes to the weight and credibility—not the legal sufficiency—of Nicholson's and Hawthorne's testimony. And it is the jury's job to make weight and credibility determinations. *Osborne*, 54 So. 2d at 846. "[W]here the evidence justifies a verdict," we must accept this evidence "as having been found worthy of belief." *Gillett v. State*, 56 So. 3d 469, 505 (Miss. 2010).

### B. Timber Theft

¶31. Next, Terrell specifically challenges the sufficiency of the evidence supporting his conviction for timber theft. Under Mississippi Code Section 97-17-59(2) (Rev. 2014):

> Any person who shall knowingly, willfully and feloniously take, steal and carry away from the lands of another any merchantable timber on the property of another, of the value of Two Hundred Fifty Dollars ($250.00) or more, whether such timber is growing, standing, or lying on the lands, shall be guilty of a felony[.]

¶32. Timber theft is a form of larceny. *See e.g., Pollard v. State*, 932 So. 2d 82 (Miss. Ct. App. 2006). And essential to any larceny is "asportation"—the carrying away or removal of the property with the felonious "intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner." *Mapp v. State*, 248 Miss. 898, 904, 162 So. 2d 642, 645 (1964). Terrell argues the State failed to prove this element because it was not Terrell or someone in on the scam who carried away McLendon's timber. Instead, the timber was harvested by one of Terrell's victims, Brushy

---

(Miss. 1999)). "[O]nce the existence of a conspiracy is shown, only slight evidence is required to connect a particular defendant with the conspiracy." *Id.* (citing *United States v. James*, 528 F.2d 999, 1012 (5th Cir. 1976)).

Creek. But we fail to see how Brushy Creek's innocence in the matter absolves Terrell of criminal liability. *See McAlvey v. Commonwealth*, 605 S.E.2d 283, 286 (Va. Ct. App. 2004) (refusing to allow larceny convict to "escape criminal responsibility for a crime which he arranges to have committed by an unwitting agent"); *Jones v. State*, 256 P.3d 527, 536 (Wyo. 2011) (finding, when determining if the asportation element has been met, "no reason to draw the distinction between the agent who has no knowledge of the defendant's criminal activity and the agent who has agreed to the criminal enterprise").

¶33. While this Court has not addressed this scenario head-on—when an innocent purchaser is the one who carries away the property—other jurisdictions have. And the majority have concluded "the asportation element of larceny may be imputed to a defendant who acts through an innocent agent." *McAlvey*, 605 S.E.2d at 286 (citing *Crutcher v. State*, 246 S.W. 496 (Ark. 1923); *Scott v. State*, 189 So. 661 (Fla. 1939); *Smith v. State*, 74 S.E. 1093 (Ga. Ct. App. 1912); *Aldrich v. People*, 79 N.E. 964 (Ill. 1906); *State v. Hunt*, 45 Iowa 673, 675 (1877); *State v. Patton*, 271 S.W.2d 560 (Mo. 1954); *Sanditen v. State*, 208 P. 1040 (Okla. Crim. App. 1921); *Farris v. State*, 117 S.W. 798 (Tex. Crim. App. 1909)); *see also State v. Victor*, 368 So. 2d 711, 713 (La. 1979) (noting its prior "holding that the 'asportation' could not be accomplished by means of the acts of a third person has uniformly received scholarly criticism as illogical and unduly technical").

¶34. *McAlvey* involved very similar facts to these. There, the defendant misrepresented he owned some farm equipment and "sold" it to an innocent purchaser. At the defendant's go-ahead, the purchaser took the equipment away from the farm. On appeal of his larceny

12

conviction, the defendant made the same argument as Terrell does—that the innocent purchaser's removal of the equipment could not be attributed to him to satisfy the asportation element of larceny. The Court rejected that argument. Instead, it held that "[u]sing an innocent purchaser of property to take and carry away property not belonging to the seller is no different legally than if [the defendant] first removed it from the farm and then sold it to the innocent purchaser." *McAlvey*, 605 S.E.2d at 286; *see also Jones*, 256 P.3d at 536 (holding that an innocent purchaser's removal of a the victim's car was attributable to the defendant who "sold" it to him and thus satisfied the asportation element of larceny).

¶35.  The same is true here. The evidence showed Terrell used not only Hawthorne and Nicholson but also the unwitting Brushy Creek to steal McLendon's timber. The evidence showed Brushy Creek harvested the timber only after Terrell's coconspirators Hawthorne and Nicholson showed agents from Brushy Creek McLendon's land, falsely represented Hawthorne owned the land—by recording the fake deeds—and then accepted $20,300 in exchange for the right to harvest the timber. Thus, even though Terrell did not physically carry away McLendon's timber, he "was just as much guilty of the asportation as if he had taken the [timber] with his own hands." *Scott*, 189 So. at 662 (holding that "[i]t was not necessary for [the defendant] to take physical possession of the hogs" but instead was enough that the defendant "sold" the hogs, which were not his, to an innocent purchaser who hauled them off in his presence); *see also Smith*, 74 S.E. at 1093 (holding that the asportation element of larceny was proved by evidence the defendant pointed out a cow as his, received payment for the cow, and directed the purchaser to drive the cow away).

13

¶36. The dissent disagrees with our application of the innocent-purchaser doctrine, not based on the law, but based on a strained literal reading of the indictment. According to the dissent, the State's theory left no room for an innocent purchaser to accomplish the asportation. Instead, it insists the State had to prove the "mere conveyance" to Brushy Creek of the timber rights via false documents "actually move[d] the timber." But contrary to the dissent's stance, Terrell's asporation though an innocent purchaser is *exactly* what the indictment meant when it alleged that Terrell and his coconspirators, "[b]y use of the artifice and false documents, . . . did take, steal and carry away the merchantable timber[.]" We can all agree that the act of executing inanimate documents cannot physically move timber. And the indictment never alleged that is what happened. Instead, the indictment clearly charged that Terrell accomplished the timber larceny through an innocent purchaser, asserting Terrell, Hawthorne, and Nicholson "did by the use and employment of false documents, . . . convey[] the timber located and growing on said real property in exchange for United States currency to a timber company, namely Brushy Creek Timber Company, *causing said timber to be harvested*[.]" (Emphasis added.)

¶37. Terrell pushes this same asportation argument in his attack on the jury instructions. As the dissent points out, the timber-theft instruction tracked the language of the indictment. So for the same reason we reject his no-evidence-of-asportation claim, we find no merit in his argument that the timber-theft instruction given did not properly instruct the jury on the asportation element.

¶38. We also find the judge properly refused to instruct the jury that Terrell had to personally carry away the timber to be guilty of timber theft. Again, this is not the law. Instead, we find the judge was right to instruct that Terrell was guilty of timber theft, if the jury found "[b]y use of the artifice and false documents, . . . Terrell did take, steal and carry away the merchantable timber[.]"[5]

¶39. Because the evidence was sufficient and the jury was properly instructed, we affirm Terrell's conviction and sentence for timber theft.

### C.    *False Pretenses*

¶40. Terrell next attacks the sufficiency of the evidence to support his false-pretenses conviction. Under Mississippi Code Section 97-19-39(2) (Rev. 2014):

> Every person, who with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by another false pretense, obtain the signature of any person to any written instrument, or obtain from any person any money, personal property, or valuable thing, with a value of Five Hundred Dollars ($500.00) or more, upon conviction thereof shall be guilty of a felony[.]

---

[5] More specifically, Terrell argues the judge wrongly refused his proposed instruction D-8—an instruction that required the State to prove the asportation element was accomplished personally by Terrell. He also insists the judge erred by opting instead to give Instruction Number 7, instructing that, to find Terrell guilty, the State must prove he "did by the use and employment of false documents" convey McLendon's timber to Brushy Creek, "causing said timber to be harvested." First, D-8 is an incorrect statement of the law. Again, Terrell did not have to physically carry away the timber to be guilty of timber theft. And second, under the innocent-purchaser doctrine, Terrell was guilty of timber theft, if the jury found, as Instruction Number 7 correctly stated, "[b]y use of the artifice and false documents, . . . Terrell did take, steal and carry away the merchantable timber[.]"

There are three necessary elements to this count: (1) "the pretenses were false," (2) Terrell "knew them to be false," and (3) "the pretenses were the moving cause by which the money was obtained." *Allred v. State*, 605 So. 2d 758, 761 (Miss. 1992) (citations omitted).

¶41. On appeal, Terrell does not suggest the State failed to prove any one of these three elements. Instead, he relies on what *Allred* further requires the State to prove in a false-pretenses case—that "the property or money obtained under false pretenses must have been 'to the detriment or injury of the person from whom he obtains the same.'" *Id.* (quoting *Carter v. State*, 386 So. 2d 1102, 1105 (Miss. 1980)). Terrell argues the State failed to show his intended false-pretenses victim, Brushy Creek,[6] suffered an injury or detriment. As support, Terrell latches on to Davis's testimony that it sold McLendon's timber for a $6,000 profit. In other words, Terrell argues Brushy Creek suffered no injury or detriment because it lost no money on the deal.

¶42. But the State did not have to show Brushy Creek suffered a *monetary loss* to prove it had been injured. Nor was it required to prove it wrote the $20,300 check to its detriment. Instead, the alleged detriment was that Brushy Creek did not lawfully obtain title to the timber, because Hawthorne forged the deeds. *See Anderson v. State*, 738 So. 2d 253, 257 (Miss. Ct. App. 1998) (noting that a bona fide purchaser of stolen property acquires no title

---

[6] As this Court has explained, the difference between larceny and false pretenses is the victim's intent. In larceny, the victim has no intent to transfer possession of his property to the defendant. But in false pretenses, the victim actually intends to transfer title and possession of his property based on the false representations of the defendant. *Courtney v. State*, 174 Miss. 147, 164 So. 227 (1935). Thus, when Terrell committed timber larceny, McLendon was the victim and Brushy Creek was the unwitting agent carrying out the asportation. But in paying $20,300 for the right to harvest McLendon's timber, Brushy Creek became a victim too—the victim of false pretenses.

16

or interest in the property). The title still belongs to McLendon. Thus, as the indictment pled, Brushy Creek is indebted to McLendon for the fraudulently obtained timber.

¶43. Because the evidence showed Brushy Creek paid $20,300 for timber to which it never acquired title or interest, just as in *Anderson*, "[t]he jury was entitled to draw a reasonable deduction . . . that [Brushy Creek] suffered an injury as a result of [Terrell's] fraudulent conduct." *Id.* at 257-58.

¶44. We therefore find no error in the judge's refusal to give Terrell's proposed jury instruction, D-4, which erroneously would have required the State to prove Brushy Creek suffered a "monetary loss" to find Terrell guilty of false pretenses. Nor can we find reversible error in the trial court's choosing to give Jury Instruction Number 9 as the instruction on false pretenses, instead of Terrell's proposed instruction, D-6. While D-6 succinctly listed the essential elements of false pretenses, Instruction Number 9 correctly states the law, was tailored to the facts of the case, and included all essential elements of false pretenses.

¶45. So the evidence was sufficient and the jury was properly instructed on the false-pretenses count.

### D. Two Conspiracies

¶46. While the evidence supports both the false-pretenses and timber-theft convictions, we agree with Terrell that it supports only *one* conspiracy conviction.

¶47. Terrell was convicted of both conspiracy to commit timber theft and conspiracy to commit false pretenses. He received separate, consecutive, five-year sentences on each

17

count. But "[a] single agreement to commit several crimes constitutes one conspiracy." *United States v. Broce*, 488 U.S. 563, 570-71, 109 S. Ct. 757, 763, 102 L. Ed. 2d 927 (1989); *see also United States v. Rabhan*, 628 F.3d 200, 204 (5th Cir. 2010). And, here, the evidence shows there were not two separate conspiracies but rather one conspiracy with two illegal objects—to steal McLendon's timber and to obtain $20,300 from Brushy Creek through false pretenses.

¶48. Thus, Terrell's two, five-year sentences for conspiracy to commit false pretenses and conspiracy to commit timber theft punish him twice for the same illegal agreement, violating the constitutional prohibition against double jeopardy. *See* U.S. Const. amend V (applicable to the States through the Due Process Clause of the Fourteenth Amendment).

¶49. To remedy this double punishment, we vacate both sentences and remand the two conspiracy convictions to the trial court with instructions to dismiss—at the State's election—one of the conspiracy counts and resentence Terrell on the remaining conspiracy count. *See, e.g.*, *United States v. Privette*, 947 F.2d 1259, 1263 (5th Cir. 1991).

## II. Motion for New Trial

¶50. Alternatively, Terrell claims he is entitled to a new trial based on the admission of the civil judgments, the prosecution's closing argument, the weight of the evidence, and/or the trial court's failure to approve his coconspirators' immunity agreements.

### A. Admission of Civil Judgments

#### 1. Uniform Rule of Circuit and County Court Practice 9.04

¶51.    As he argued to the trial court, Terrell maintains the admission of the previously undisclosed civil judgments entitled him to a mistrial under Rule 9.04. *See* URCCC 9.04. This rule—now supplanted by Mississippi Rule of Criminal Procedure 17.9(b)—adopted the procedures set forth in ***Box v. State***, 437 So. 2d 19, 23-24 (Miss. 1983) (Robertson, J., specially concurring). These ***Box*** procedures apply when the State attempts to enter previously undisclosed evidence over the defendant's objection. ***McCullough v. State***, 750 So. 2d 1212, 1217 (Miss. 1999). Rule 9.04 directs the trial court to "grant the defense a reasonable opportunity to interview the newly discovered witness [and] to examine the newly produced documents[.]" URCCC 9.04. Then—

> If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

*Id.*

¶52.    In reviewing what transpired at trial, we find the trial judge properly followed the ***Box*** protocol. When the State first tried to call Langley to introduce the civil judgments, the judge did not allow this. He told the State he would consider this later in the trial. This gave Terrell's counsel additional time to review the documents. And when the State later recalled Langley, the court recessed trial to give Terrell's attorney an opportunity to interview Langley. *See* URCCC 9.04. After doing so, the trial judge determined a mistrial was not warranted, because the existence of the publicly recorded judgments could hardly have come

19

as an "unfair surprise" to Terrell or his attorney, who also represented Terrell in these civil matters.

¶53.    The decision to deny a mistrial was within the court's discretion.  *See Mouton v. State*, 227 So. 3d 1079, 1083 (Miss. 2017) (citing *Hurst v. State*, 195 So. 3d 736, 744 (Miss. 2016); *Payton v. State*, 897 So. 2d 921, 942 (Miss. 2003)) (decisions on Rule 9.04 and motions for continuance are within the trial court's discretion).  After review, we find no abuse of that discretion.

*2.    Rules of Evidence 403 and 404(b)*

¶54.    Nor do we find error in the trial court's determining the probative value of the civil judgments outweighed any danger of unfair prejudice.  *See* M.R.E. 403.

¶55.    On appeal, Terrell argues the trial court erred by even reaching a Rule 403 balancing test and that it instead should have found this evidence was completely inadmissible under Rule 404(b).  *See* M.R.E. 404(b).  But Terrell did not advance this argument at trial and thus cannot raise it for the first time on appeal.  *Rubenstein v. State*, 941 So. 2d 735, 761 (Miss. 2006) ("An established principle of appellate review is that issues not brought before the trial court are deemed waived and may not be raised for the first time on appeal.").  Instead, Terrell's alternative objection to Rule 9.04 was that the evidence should be excluded under Rule 403, because the probative value of this evidence to prove knowledge and intent was outweighed by the danger of unfair prejudice.  And he asked for a limiting instruction on the use of this evidence.[7]

---

[7] When counsel's objection, made on page 323 of the transcript, is taken in its entire context, it becomes even more clear that Terrell's counsel was asking the trial court to

¶56.　Thus, just as in *Pollard*, the question we face on appeal is not whether the civil judgments were relevant—and thus admissible—under Rule 404(b). Rather, the inquiry is whether the probative value of this evidence to show Terrell's knowledge and intent was outweighed by the danger of unfair prejudice. *Pollard*, 932 So. 2d at 87-88.

¶57.　Because the civil judgments were admitted under Rule 404(b), the trial court properly recognized this evidence would have to pass through Rule 403's filter. *See id.* at 88. "In making this determination, the trial court is given a degree of discretion." *Id.* In *Pollard*, the Court of Appeals affirmed a trial court's strikingly similar decision. In that timber-theft case, the trial judge had admitted under Rule 404(b) evidence that the defendant had not paid for timber he had cut from another property owner's land. This evidence was admitted to show the defendant's intent to steal the timber he was criminally charged with taking. *Id.*

---

exclude the evidence based on Rule 403:

> Your Honor, one thing I would like to add just for the record. We think that this proposed evidence is more prejudicial than probative, and we would ask the Court to make that determination on the record, and we would also—my understanding of the rule with respect to prior bad acts would be that this evidence will not be probative of the defendant's guilt on these two charges simply to show his bad character. And we would ask—I have not had an opportunity to prepare the Jury instruction, and we would ask the court if the Court sees fit, to allow this testimony to come in, that the Court will instruct the jury, when the time comes, properly about the weight and the consideration that they can give to this evidence and that is not evidence for it, to be used by them as evidence of the defendant's guilt in this case.

But even if we agreed with the dissent that Terrell specifically made—and thus preserved on appeal—an objection based on Rule 404(b), such an objection would not have made a difference. The trial court clearly had the discretion to admit the judgments based on Rule 404(b)'s permitted uses.

21

at 87. In doing so, the trial court "implicit[ly] . . . found the evidence more probative than prejudicial." *Id.* at 88. Finding no abuse of discretion, the Court of Appeals affirmed.

¶58. Here, we likewise find no abuse of discretion. Evidence of a wrong act "is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." M.R.E. 404(b). However, Rule 404(b) permits admission for other purposes. These purposes include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." And, here, just as in *Pollard*, evidence Terrell had been found liable for taking other people's timber and forging deeds showed Terrell had the requisite knowledge and intent to plot a conspiracy to take McLendon's timber by forging deeds to sell the timber to Brushy Creek. *Pollard*, 932 So. 2d at 88.

¶59. The State's theory was that Terrell, whose name was not on the deed and who never met agents from Brushy Creek in person, put Hawthorne and Nicholson up to the scheme. In his waffling testimony, at some point Hawthorne suggested Terrell was just the fall guy, unconnected with the conspiracy. But when pressed, Hawthorne admitted Terrell actually had paid him not to testify at Terrell's trial. "[O]ur traditional view [is] that in a conspiracy prosecution, the range of relevant evidence is quite wide." *Ford v. State*, 546 So. 2d 686, 689 (Miss. 1989) (citing *Peoples v. State*, 501 So. 2d 424, 429 (Miss. 1987); *McCray v. State*, 486 So. 2d 1247, 1251 (Miss. 1986); *Griffin v. State*, 480 So. 2d 1124, 1126 (Miss. 1985)). Considering that Terrell tried to bribe his coconspirator not to testify, the evidence that Terrell had been found civilly liable for cutting timber not belonging to him and for

22

forging a deed was relevant to show Terrell not only knew about and intended to join but also planned the conspiracy to have Hawthorne forge deeds to "sell" McLendon's timber to Brushy Creek for $20,300. *See United States v. Gonzalez*, 76 F.3d 1339, 1347-48 (5th Cir. 1996) (holding that, in a conspiracy case, evidence defendant had been charged in a similar crime "raises the issue of intent sufficiently to justify the admission of Rule 404(b) evidence"); *see also Shanklin v. Lowman*, 2011 WL 290643, at *13 (Ohio Ct. App. Jan. 24, 2011) (holding that civil judgments against a defendant for unauthorized cutting of trees, though involving slight factual differences, were "still relevant as [they] involved Lowman removing timber from property without authorization" and thus were admissible as other-acts evidence in a landowner's action against a proprietor alleging trespass, damage to real property, and conversion of lumber).

¶60. As the dissent notes, the civil judgments here were entered after Terrell committed the charged crimes. But that does not itself make them less relevant. This court has held, "[e]vidence of other bad acts is . . . admissible regardless of whether they occur before or after the charged offense." *Leedom v. State*, 796 So. 2d 1010, 1015 (Miss. 2001). And this Court's view is not an outlier. It is generally accepted that "Rule 404(b) draws no distinction between bad acts committed before and bad acts committed after the charged offense." *United States v. Latney*, 108 F.3d 1446, 1449 (D.C. Cir. 1997). Instead, "the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged." *Id.* at 1450 (citing *United States v. Delgado*, 56 F.3d 1357, 1365 (11th Cir. 1995); *United States v. Olivo*, 80 F.3d 1466, 1469

23

(10th Cir. 1996); *United States v. Beechum*, 582 F.2d 898, 902 n.1 (5th Cir. 1978) (en banc)). *See also United States v. Mohr*, 318 F.3d 613, 617 (4th Cir. 2003) (Rule 404(b) "covers evidence of both prior and subsequent acts."); *United States v. McGilberry*, 620 F.3d 880, 886 (8th Cir. 2010) ("Rule 404(b) draw[s] no distinction between prior and subsequent acts that would support different analyses[.]"); *United States v. Bibo-Rodriguez*, 922 F.2d 1398, 1400 (9th Cir. 1991) (holding subsequent-act evidence was admissible to prove intent). So long as "the bad acts evidence is relevant to something provable other than the defendant's character," it is admissible under Rule 404(b). *Latney*, 108 F.3d at 1449.

¶61.    A good example and discussion of this is found in *Latney*, where a defendant was charged with aiding and abetting in the distribution of crack cocaine. Eight months after the alleged crime, during the defendant's arrest, the police found 250 grams of crack cocaine in his home and more cocaine in his car. Over the defendant's Rule 404(b) objection, the trial court admitted this later evidence to show the defendant's intent and knowledge of the earlier-occurring crime. *Id.* at 1448. On appeal, the D.C. Circuit found the evidence's probative value to show knowledge and intent of the charged crime "beyond question." *Id.* The fact the defendant was using his car eight months later to facilitate drug trafficking "made it more likely that he was doing the same eight months earlier." *Id.*

¶62.    In affirming the trial court's ruling, the D.C. Circuit rejected the argument that the dissent essentially implies here—that the timing of the bad act makes it less relevant. In doing so, the Court gave the following analogy:

> Suppose the defendant is charged with committing a murder in 1990. The fatal
> bullet contains distinctive rifling markings. In 1993 the defendant is arrested

24

for illegal possession of a pistol. When the pistol is test fired, the bullets contain the same markings. *No one would suppose that because the defendant was found in possession of the pistol three years after the murder this evidence is not relevant.* Of course if the defendant had been caught with the gun three hours after the shooting, that evidence would be more powerful. But the strength of the evidence is a different matter than its relevancy. So long as the evidence makes a fact of consequence more or less likely, it is relevant.

*Id.* at 1450 (emphasis added).

¶63. Here, the timing of the entry of the civil judgments went to the weight, not the relevance—and thus the admissibility—of this evidence. The civil judgments clearly were relevant to show Terrell's knowledge and his intent to use forged deeds to steal McLendon's timber by illegally "selling" it to Brushy Creek. Thus, under Rule 404(b), this evidence was admissible. And given the relevance of this evidence under Rule 404(b), we cannot say the trial court abused its discretion under Rule 403 when it found the probative value of this evidence outweighed the danger of any unfair prejudice. *See **Pollard***, 932 So. 2d at 87-88.

¶64. At the close of trial, as requested by Terrell, the trial court gave a limiting instruction, specifically admonishing the jury it "must not consider this testimony as proof of guilt of the charges for which he is presently on trial." And our law requires we presume the jury followed this instruction. *See **Batiste v. State***, 121 So. 3d 808, 834 (Miss. 2013). Therefore, we find the admission of these judgments into evidence was not error.

### B. Closing Argument

¶65. Terrell further claims he is entitled to a new trial based on the State's closing argument. According to Terrell, the way the State discussed the two civil judgments invited the jury to consider this evidence as proof of his bad character, not just his intent and

knowledge, in violation of Rule 404(b). Terrell also asserts the State made an impermissible "send a message" argument. But as Terrell concedes, he made no contemporaneous objection to the alleged improper statements. And as we have said, "[t]he failure to object acts as a waiver." *Jackson v. State*, 174 So. 3d 232, 236 (Miss. 2015) (quoting *Havard v. State*, 928 So. 2d 771, 791 (Miss. 2006)).

¶66. Acknowledging this, Terrell asserts the State's use of the civil judgments amounts to plain error. But for there to be plain error, there must a clear, plain, and obvious deviation from a legal rule that prejudiced the outcome of trial. *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013). And here there was no error. In closing, the State highlighted that the civil judgments showed Terrell's knowledge, intent, and opportunity to steal McLendon's timber through the use of forged deeds.[8] Given the "wide latitude" attorneys are afforded during closing,[9] we cannot say these comments amounted to obvious error. Moreover, even if this issue was not procedurally barred, Terrell cannot show prejudice. The trial court clearly instructed the jury on the limited admissibility of the Rule 404(b) evidence. And, again, we must presume jurors followed the court's instructions. *Batiste*, 121 So. 3d at 834.

---

[8] After referencing the civil judgment, the State asked:

> Do you know what this proves? This proves that he knew how to steal timber. That he likes to steal timber. That he knows how to make easy money by stealing timber. . . . The notary public, if they had been honest and efficient the way that they were supposed to be, this would have never happened. Robert Terrell knew that. He knows what he has to have have, a corrupt notary public to do these deeds, and that's what he did. In this case, that's what he did. I don't know exact—all the details of this. I just got the judgment. This man loves to steal timber. That's what he does.

[9] *Rose v. State*, 954 So. 2d 968, 1001 (Miss. 2007).

26

¶67. Terrell also contends the State made a "send a message" argument that was so inflammatory and prejudicial that the trial court should have objected *sua sponte*. *See O'Connor v. State*, 120 So. 3d 390, 399 (Miss. 2013) (holding that "even in the absence of a contemporaneous objection, we will review on appeal a claim that a prosecutor made an improper send-a-message argument if the argument is so inflammatory that the trial judge should have objected on his own motion." (internal quotations omitted)). Again, Terrell did not object at trial. And after review, we do not find the State's comments so inflamed the jury that the trial court erred by not intervening on its own. A "send the message" argument is one that encourages "juries to use their verdict to 'send-a-message' to the public or to other potential criminals," instead of "render[ing] a verdict based solely on the evidence introduced at the trial of that case." *Brown v. State*, 986 So. 2d 270, 275 (Miss. 2008). Here, the jury was invited—not to send a message to other potential criminals—but to understand why a deal was struck with coconspirators, for the purpose of protecting people like McLendon and his wife from Terrell.[10] Furthermore, this issue is procedurally barred, and the argument did not amount to not reversible error.[11]

---

[10] The State argued:

> I don't think we should leave people like John McLendon and his wife out and abandon them. I think we need to protect those kind of people. I think if it's—if it's a young person that gets his timber cut, I think we have a duty to do whatever we can to get the crooks off the street. We had to make a deal with Ricardo Hawthorne and LeArchie to get the guy of the scheme, of the scam, the flimflam who typed the deeds, who told Ricardo what he had to do, who he had to talk with. If we have to make a deal with them, we will.

[11] Bar aside, for a send-the-message argument to be reversible error, a defendant has to show prejudice. *See Brown*, 986 So. 2d at 276. And here, the evidence was such that the

27

## C. *Weight of the Evidence*

¶68.   Terrell next complains the jury's verdict was so contrary to the overwhelming weight of the evidence as to warrant a new trial.  We review the denial of a motion for new trial for abuse of discretion.  "In carrying out this task, we weigh the evidence in the light most favorable to the verdict, 'only disturb[ing] a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" ***Little v. State***, 2014-CT-01505-SCT, 2017 WL 4546740, at *4 (quoting ***Lindsay v. State***, 212 So. 3d 44, 45 (Miss. 2017)).

¶69.   Our review shows no such injustice.  The evidence Terrell claims preponderates so heavily against his verdict is Nicholson's and Hawthorne's inconsistent testimony and that Hawthorne testified he tried to give Terrell his cut of the $20,300, but Terrell refused it.  As mentioned, what weight and credibility to assign Nicholson's and Hawthorne's testimony was a question solely for the jury.  ***Osborne***, 54 So. 3d at 846.  We must view  testimony in the light most favorable to the verdict.  And in this light, their testimony supports the jury's decision.  The same is true with Hawthorne's testimony that Terrell refused his cut of the money.  The crime of conspiracy is complete when the agreement is formed. ***State v. Thomas***, 645 So. 2d 931, 933 (Miss.1994).  When viewed in the light most favorable to the verdict, the evidence Terrell tried to distance himself from the conspiracy after the fact is immaterial.

¶70.   Thus, the trial court did not err when it denied Terrell's motion for a new trial.

---

jury still could have found Terrell guilty without the State's comments.  ***Id.***

### D.      *Coconspirator Immunity Agreements*

¶71.    Terrell finally argues that the judge reversibly erred when it denied Terrell's request "to approve the immunity agreements between the district attorney's office and [Hawthorne] and Nicholson, respectively, and explain to each of them that they were being granted transactional immunity in exchange for their testimony[.]"  But Terrell cites no relevant authority.[12]  The district attorney did not have to enter into an immunity agreement before Nicholson and Hawthorne testified, as Terrell asserts, to protect *Terrell* from the possibility his two coconspirators would offer perjured testimony in exchange for immunity.  Instead, the issue of possible perjury stemming from an immunity offer is one for cross-examination. *See Foster v. State*, 508 So. 2d 1111, 1114-15 (Miss. 1987), *overruled on other grounds*. And the trial judge did not hinder Terrell's right to vigorously cross-examine his coconspirators.

¶72.    Therefore, we find Terrell was not entitled to a new trial.

**Conclusion**

¶73.    Because Terrell is not entitled to a new trial and the evidence was sufficient to support both his timber-theft conviction (Count I) and his false-pretenses conviction (Count III), we affirm those two convictions and sentences.  But because the evidence was insufficient to support two conspiracy convictions, we vacate the sentences for both conspiracy convictions (Count II and Count IV) and remand the two conspiracy convictions to the trial court with

---

[12] Terrell does cite *Wright v. McAdory*, 536 So. 2d 897 (Miss. 1988).  But this case is not on point.  *Wright* addresses a *witness's* right to remain silent and whether he or she can be compelled to testify when offered an immunity agreement.  It does not address a defendant's rights.  Moreover, Nicholson and Hawthorne testified voluntarily.

instructions to dismiss—at the State's election—one of the conspiracy counts and resentence Terrell on the remaining conspiracy count.

¶74. **AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

**RANDOLPH, P.J., COLEMAN, BEAM, CHAMBERLIN AND ISHEE, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, P.J.**

**KING, JUSTICE, DISSENTING:**

¶75. Insufficient evidence exists to convict Terrell of timber theft; therefore, I would reverse and render his timber theft conviction. Further, the trial court abused its discretion by admitting the civil judgments against Terrell; therefore, I would reverse his remaining convictions and remand them for a new trial, in which Terrell could only be convicted of one conspiracy charge.

*1. Whether the trial court abused its discretion by admitting the two civil judgments into evidence under Rules 403 and 404.*

¶76. On the second day of trial, the State attempted to call as a witness Clint Langley, the circuit clerk, to place into evidence two civil judgments against Terrell. Because Langley was not on the witness list, Terrell claimed unfair surprise, citing Rule 9.04. The State maintained that the civil judgments were against Terrell for the wrongful cutting of timber and it moved to place them into evidence under Mississippi Rules of Evidence 403 and 404(b) as evidence of motive, intent, plan, and identification. The prosecutor stated that "As to the heart of the case, they're denying that Terrell had anything to do with it, and we're showing that he did the same exact thing in three different counties in recent years." The

30

court decided that Langley would not testify at that moment, and gave Terrell time to review the judgments.

¶77.   Later that day, the court determined that it had given Terrell sufficient time to review the evidence and noted that the judgments were matters of public record.  The court allowed Terrell an hour and a half to interview Langley.  Terrell again objected based on unfair surprise.  The State noted that "We're not getting into collections, Your Honor.  We're here to indicate to the jury that's what this man does, is steal people's timber, and that we got two . . ." (the court cut off the prosecutor at this point).  Terrell also objected that the judgments were more prejudicial than probative and that the judgments were being introduced as evidence of prior bad acts to show Terrell's bad character.

¶78.   The majority inexplicably claims that Terrell did not object based upon Rule 404(b) and only requested a limiting instruction.  On page 323 of the transcript, Terrell's counsel specifically objected that "my understanding of the rule with respect to prior bad acts would be that this evidence will not be probative of the defendant's guilt on these two charges simply to show his bad character."  Counsel then argued in the alternative, that if the trial court did allow the evidence in over his objection, that the court should give a limiting instruction, stating that he wanted a limiting instruction "if the Court sees fit[] to allow this testimony to come in[.]"  The majority conflates these and blatantly punishes defense counsel for being thorough.  It also appears to make new law that, if counsel objects, but then makes an argument in the alternative, counsel somehow has waived the original objection.  This has never been the law in Mississippi, nor should it be.  The majority's warping of the record to

31

find waiver is inexcusable and will suppress zealous advocacy. Moreover, the trial court specifically addressed Rule 404(b) on page 324 of the transcript. The purpose of the contemporaneous objection rule is to allow the trial court to address and/or correct any issues. *Walker v. State*, 913 So. 2d 198, 238 (Miss. 2005). The trial court addressed Rule 404(b), because it was raised by both parties; thus this is not a situation in which this Court would be finding the trial court in error for an issue it did not have the opportunity to address. Additionally, Terrell specifically raised Rule 404(b) in his motion for judgment notwithstanding the verdict or, in the alternative, motion for a new trial, with the specific objection found on page 195 of the record in this case. Even more telling is that the State does ***not*** argue that Terrell waived this issue; indeed, it argues the merits of the Rule 404(b) issue because the record makes clear that Terrell sufficiently objected based on Rule 404(b). I have grave concerns with the majority holding that arguments in the alternative effectively waive a proper objection, particularly in a criminal case in which we should be encouraging zealous advocacy. *See **Brown v. State***, 890 So. 2d 901, 912-13 (Miss. 2004) (placing the burden on counsel to request a Rule 404(b) limiting instruction); ***Rubenstein v. State***, 941 So. 2d 735, 760-61 (Miss. 2006) (failure to request a Rule 404(b) limiting instruction operates as a procedural bar to raising the issue on appeal).

¶79.   Langley testified and the judgments were entered into evidence. The first document was a three page order from 2012 granting summary judgment against Terrell and awarding the plaintiffs monetary damages. It did not recite the facts of the case, nor did it state that the case was about timber. Indeed, timber is not even mentioned in the order. It awarded

monetary damages to two plaintiffs, and also found that a warranty deed executed by one of the plaintiffs was a forgery, ordering the deed to be struck and confirming the original parties' interest in the land. It made no findings regarding who forged the deed or how it was forged. The second document consisted of a two-page default judgment against Terrell issued in 2009. The default judgment found that Terrell "wrongfully cut and removed timber from" the plaintiff's land, and awarded her a monetary judgment. During his testimony, Langley stated that he did not know any of the facts of the cases other than what was in the documents.

¶80.    During the State's closing argument, the prosecutor referred to the judgments, noting "Do you know what this proves? This proves that he knew how to steal timber. That he likes to steal timber. That he knows how to make easy money by stealing timber." He also stated that "I don't know exact – all the details of this. I just got the judgment. This man loves to steal timber. That's what he does."

¶81.    This Court reviews questions regarding the admissibility of evidence for abuse of discretion. *Gore v. State*, 37 So. 3d 1178, 1183 (Miss. 2010). Moreover, this Court will not reverse a ruling on admissibility unless the abuse of discretion was prejudicial to the defendant. *Id.*

¶82.    "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character[,]" but it may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Miss. R. Evid. 404(b).

33

However, even if the evidence is admissible, the court may exclude it "if its probative value is substantially outweighed by the danger of . . . unfair prejudice." Miss. R. Evid. 403. "The reason for the rule is to prevent the State from raising the inference that the accused has committed other crimes and is therefore likely to be guilty of the offense charged." *White v. State*, 842 So. 2d 565, 573 (Miss. 2003).

¶83. The prosecution certainly gave lip service to "motive, intent, plan, and identity," yet, it failed to articulate *how* a default judgment for wrongful timber removal and an order granting summary judgment that mentions forgery without tying it directly to Terrell show any motive, intent, plan, or identity *in the particular circumstance at hand*. Indeed, the State indicated several times that the judgments were being introduced precisely to prove that Terrell acted in accordance with his character, stating that the judgments show that he had previously done "the exact same thing" and would show the jury that this is "what this man does, is steal people's timber." "[T]he prosecution may not introduce prior bad acts for the purpose of showing that the defendant has a propensity to engage in such conduct, that is, because he had done things like this before, he probably did it this time." *Cole v. State*, 126 So. 3d 880, 885 (Miss. 2013).

¶84. The State's proffered excuse that the evidence shows intent, motive, or plan fails. The State did not show that the facts behind the two judgments were similar to the facts of the case at hand. *See, e.g.*, *Boggs v. State*, 188 So. 3d 515 (Miss. 2016) (examining whether the other acts bore "a substantial resemblance to the offense charged as to be admissible under Rule 404(b)"). To show intent, motive, or plan to commit timber theft, the State ostensibly

34

introduced the default judgment for wrongful timber removal. However, a civil default judgment for wrongful timber removal could be related to something as simple as mistaken property lines. Further, because it is a default judgment, the facts of the alleged act committed by Terrell were not proven to any reasonable degree of certainty. Indeed, to receive a default judgment, all that is *required* to be shown is that the defendant is in default. M.R.C.P. 55. No evidence is necessary, unless the trial court determines otherwise. *Id.* How such a default judgment shows intent, motive, plan, or identity is a mystery. The State also introduced an order granting summary judgment against Terrell that does not mention timber. The judgment does mention that a deed was a forgery, but gives no facts surrounding that forged deed, who forged it, or how it was forged. Moreover, the judgment was issued more than one year *after* the occurrences in this case. How this order shows intent, motive, plan, knowledge, or identity in the current case is also unclear. The majority argues that this judgment shows knowledge and intent, without explaining how a judgment from late 2012 with only bare facts included can show that Terrell had the requisite knowledge or intent to commit crimes in *2011*.[13] Especially when combined with the State's *explicit statements* indicating that this evidence was offered to prove conformity with Terrell's other actions, it appears this evidence does not fit an exception under Rule 404(b) and was improperly admitted.

---

[13]While it may be true that under Rule 404(b) the "act" may occur after the alleged crime in question, that does not change the fact that, especially combined with the sparse-to-nonexistent facts contained in the 2012 judgment and the fact that the State acknowledged that the judgments were offered to prove conformity therewith, the act occurring after the alleged crime in question makes it more difficult to show that it was introduced to show any sort of knowledge or plan.

¶85. The majority also cites *Pollard v. State* in support of its argument,[14] claiming that the case is "strikingly similar" and that the Court of Appeals affirmed under Rule 404(b) because it "found" no abuse of discretion. Maj. Op. at ¶ 57; *Pollard v. State*, 932 So. 2d 82, 87-88 (Miss. Ct. App. 2006). Not only does this statement misrepresent the court's holding in *Pollard*, but *Pollard* is factually distinguishable. In *Pollard*, Duncan hired Pollard to cut some timber on his land. *Id.* at 84. Pollard cut some timber from the property adjacent to Duncan's, allegedly mistakenly. *Id.* Pollard offered to pay the landowner for the cut timber, but refused to pay the estimated value, offering her less money. *Id.* At trial, Duncan testified that "Pollard had not paid him for several loads of timber cut from his land." *Id.* at 87. The trial court overruled the defense's objection, stating that the evidence showed intent to steal under Rule 404(b). *Id.* at 87-88. The defense *did not challenge this finding on appeal*, nor did the Court of Appeals "hold" that the evidence passed muster under Rule 404(b). Instead, the defense challenged whether the trial court erred by failing to perform an on-the-record Rule 403 balancing. *Id.* That is the issue that the Court of Appeals addressed. Moreover, the exact landowner who had hired Pollard in the first place was testifying as to nonpayment for timber, thus, the facts were substantially similar to the case on trial, unlike the lack of facts found in the prior bad acts introduced in the case at hand.

---

[14]The majority also cites an unpublished Ohio Court of Appeals *civil* case in support of its argument. *Shanklin v. Lowman*, 2011 WL 290643, at *13 (Ohio Ct. App. Jan. 24, 2011). In that case, the Ohio Court of Appeals rested its decision on the fact that the *defendant* "fails to explain how the prior civil judgments against him were of a different nature than the current incident." *Id.* Clearly, placing such an onus on Terrell would violate his right not to testify.

36

¶86. Additionally, Rule 403 provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." M.R.E. 403. As discussed above, the facts underlying the civil judgments admitted were not even adduced. A factually sparse default judgment and a factually sparse order granting summary judgment have minuscule probative value. The danger of unfair prejudice vastly outweighed any probative value, as the introduction of the civil judgements could "render [Terrell] in the eyes of jurors liable, not because of what he did or did not do in the instant case, but because of what he has done or failed to do in the past." *Mitchell v. State*, 110 So. 3d 732, 734 (quoting the comment to Mississippi Rule of Evidence 404). Indeed, the State explicitly used these judgments to argue to the jury that "This man loves to steal timber. That's what he does."

¶87. The admission of this evidence prejudiced Terrell. The damage was done when the jury was presented with inadmissible, prejudicial evidence. *See Robinson v. State*, 35 So. 3d 501, 507 (Miss. 2010) (When the evidence was admitted, the "damage [was] done with respect to the jury being presented with inadmissible, prejudicial evidence[.]"). The evidence was adduced before Terrell even had the chance to put on a defense. *Id.*; *Hargett v. State*, 62 So. 3d 950, 954 (Miss. 2011). The bulk of the evidence against Terrell consisted of the contradictory, inconsistent testimony and statements of Terrell's alleged accomplices. This accomplice testimony "would not have had the same persuasive effect without" the evidence of the judgments. *Hargett*, 62 So. 3d at 954. "Certainly it cannot be determined that a guilty

37

verdict would have been reached without" the evidence of the civil judgments. *Id.* For this reason, this Court should reverse the four convictions against Terrell.[15]

### *2. Whether the evidence was insufficient as a matter of law to convict Terrell of timber theft.*

¶88.   The critical inquiry regarding whether the evidence is sufficient to sustain a conviction is whether, when the evidence is weighed in the light most favorable to the jury's verdict, the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Lindsey v. State*, 212 So. 3d 44, 45 (Miss. 2017) (internal quotations omitted).

¶89.   Timber theft is committed when a person "shall knowingly, willfully and feloniously take, steal and carry away from the lands of another any merchantable timber on the property of another." Miss. Code Ann. § 97-17-59(2) (Rev. 2014).  Terrell argues that "carry away" requires that he physically "carry away" the timber, and no evidence was adduced that he committed the element of carrying away.  Indeed, it is clear that Brushy Creek physically carried away the timber.  The State does not argue that Terrell physically carried away the timber.  Indeed, the indictment claims that "[b]y use of the artifice and false documents described herein, the Defendant did take, steal and carry away the merchantable timber."  The

---

[15]During closing argument, the prosecutor mentioned the judgments and stated "Do you know what this proves?  This proves that he knew how to steal timber.  That he likes to steal timber.  That he knows how to make easy money by stealing timber. . . . I bet [the plaintiffs are] elderly . . . . I bet they're about the same age as Mr. And [sic] Mrs. McClendon [sic]."  He then again mentioned the civil judgments and stated "I don't know exact – all the details of this.  I just got the judgment.  This man loves to steal timber.  That's what he does."  Clearly, these statements were inappropriate as they indicate that the jury should view the judgments as evidence of conformity with past bad acts.

38

language in the timber theft "elements" instruction was identical to that in the indictment. The trial court also rejected a "theory of the defense" instruction offered by Terrell that stated that the State had to prove that Terrell "both captured or took the physical possession of the subject merchantable timber and that he asported or carried away the subject merchantable timber by cutting or moving the same if only for a short distance." Thus, the question is whether a defendant can constructively "carry away" via false documents, or, phrased differently, whether Terrell accomplished the "carrying away" by conveying the timber to Brushy Creek.[16] This Court has found that "carrying away" requires an asportation, no matter how small. **Harbin v. State**, 402 So. 2d 360, 361-62 (Miss. 1981) (grand larceny); *see also* **Pollard**, 932 So. 2d at 86. Asportation is defined as "[t]he act of carrying away or removing." *Asporation*, Black's Law Dictionary (10th ed. 2014). "Carry away" is defined as "[t]o take or move." *Carry away*, Black's Law Dictionary (10th ed. 2014). "Asportation implies the termination of the owner's possession and the actual possession *by the*

---

[16]The trial court instructed the jury that the defendant need not commit every element of the crime himself. It instructed that an element may be "accomplished by that person through the direction of another person as his or her agent, by acting in concert with, or under the direction of, another person or persons in a joint effort or enterprise." It further instructed that "if another person is acting under the direction of the defendant or if the defendant joins another person and performs acts with the intent to commit a crime, then the law holds the defendant responsible for the acts and conduct of such other persons just as though the defendant had committed the acts or engaged in such conduct." Brushy Creek was coined a victim in this case, and no evidence exists that Terrell directed Brushy Creek, acted in concert with Brushy Creek, joined with Brushy Creek, or had any sort of joint enterprise with Brushy Creek. Indeed, after Brushy Creek obtained the timber deed, Terrell and his co-defendants had no control over what Brushy Creek did or did not do. So based on the jury instructions, Terrell cannot be liable for Brushy Creek's action. Which brings this back to the State's sole argument, that Terrell accomplished the "carrying away" via false documents.

39

*wrongdoer.*" 52B C.J.S. *Larceny* § 34 (Dec. 2017 update) (emphasis added). "[A]sportation requires some movement of the seized goods, however slight, coupled with the intent to steal at the time the seized goods are moved."[17] 50 Am. Jur. 2d. *Larceny* § 16 (Nov. 2017 update). While the conveyance of the timber in this case certainly eventually led to the timber's removal, the *mere conveyance* did not actually move the timber. The plain language of the "carry away" element in the statute clearly contemplates some physical movement of the property by the defendant or someone for whom he is criminally liable, and this is not how the indictment alleges the asportation was accomplished. *See id.* Indeed, the conveyance and the false documents did not create any movement of the timber whatsoever; that movement occurred later, via Brushy Creek. Moreover, "[i]t is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused." *Coleman v. State*, 947 So. 2d 878, 881 (Miss. 2006). Thus, the interpretation of "carry away" must be strictly construed against the State and in favor of Terrell.

¶90. The majority cites several cases regarding the "innocent agent doctrine," which essentially stands for the notion that a defendant who effectuates an element of the crime through an innocent agent may be held liable for that innocent agent's actions. Yet, that is not the issue here. Indeed, because it is not the issue at hand, the State does not raise or make any sort of innocent purchaser argument in its brief; rather, the majority attempts to create

---

[17]This article points out that many states have eliminated the "carry away" requirement and created theft charges that merely require exercising control over the property, in contrast to the statute at hand.

this argument out of whole cloth on behalf of the State.[18]  The issue is whether Terrell can "carry away" using false documents, *not* whether an innocent agent can accomplish the asportation.  Whether documents can accomplish asportation is the issue in this case because the State specifically alleged in its indictment, and the court specifically instructed the jury in its instructions, that Terrell accomplished the carrying away "[b]y use of the artifice and false documents described herein."  While such detail in the indictment may have been found to be surplusage, the State did not move to amend the indictment, took the case to trial, and had the court instruct the jury that Terrell accomplished the asportation by the use of false documents.  Nothing in the indictment or jury instructions allowed for an innocent agent to accomplish asportation.  "[T]he State handicapped itself through this indictment" by adding

---

[18]The State noted that Terrell's proposed jury instruction on the issue defined caption and asportation, and argued in its brief that this proposed instruction

> did not track the language of Terrell's indictment and failed to address the fact that Terrell fraudulently obtained John McLendon's land and sold it to the Brushy Creek Timber Company.  Instruction D-8 seems to imply that Terrell could not be convicted for timber theft because he never physically moved the timber on John's land.  Therefore, the *most serious problem* with D-8 is that it overlooks the fact that Terrell *took the land through false pretenses and then conveyed* John's timber to the Brushy Creek Timber Company.  The elements of timber theft were more thoroughly and more accurately explained to the jury in Instruction Number 7, which explained in part, "(2) By use of the artifice and false documents described herein, Robert Patrick Terrell did take, steal, and carry away the merchantable timber on the property described in said false documents, which were owned by John McClendon, said timber, having a market value at that time of more than twenty thousand three hundred dollars ($20,300.00)."  When D-8 is compared with Instruction Number D-7, it is clear that Number 7 sufficiently addressed the elements of timber theft and tracked the indictment, while D-8 failed to do so.

(Emphasis added) (citations to record omitted).

41

these details, which it must then prove. ***Richmond v. State***, 751 So. 2d 1038, 1046 (Miss. 1999); ***Lee v. State***, 944 So. 2d 35, 38-39 (Miss. 2006) ("***Richmond*** remains authority in cases where the indictment contains surplusage which was not removed prior to trial."). The State imposed on itself, perhaps unnecessarily, the obligation to prove that Terrell accomplished the asportation solely with the use of false documents, and it must be held to this. We do not address in this case whether an innocent agent can accomplish an asportation. The majority now expands the indictment to allow Terrell to be convicted based on different details than those provided in the indictment.

¶91. Consequently, the evidence was insufficient to convict Terrell for the crime of timber theft. The trial court erred by denying Terrell's motion for directed verdict on this charge. When the evidence is deemed insufficient on any element of the offense, the appropriate remedy is to reverse and render. ***Edwards v. State***, 469 So. 2d 68, 70 (Miss. 1985).

***3. Whether the prosecutor's "send a message" final argument was so inflammatory and prejudicial that it amounts to reversible error.***

¶92. When lawyer misconduct during closing arguments is alleged, this Court must determine "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." ***Jackson v. State***, 174 So. 3d 232, 236 (Miss. 2015).

¶93. During his closing argument, the prosecutor stated

> When you go back there, you're going to make a decision maybe of not guilty. I think it should be guilty. But I don't think we should leave people like John [McLendon] and his wife out and abandon them. I think we need to protect those kind of people. I think if it's – if it's a young person that's getting his timber cut, I think we have a duty to do whatever we can to get the

42

crooks off the street. We had to make a deal with Ricardo Hawthorne and LeArchie to get the guy of the scheme, of the scan, the flimflam who typed the deeds, who told Ricardo what he had to do, who he had to talk with. If we have to make a deal with them, we will.

Terrell did not object contemporaneously. The prosecutor also told the jury to "Tell him you're not going to do this anymore Robert Patrick Terrell. We got our eye on you."

¶94. This Court examines two threshold questions to determine whether a "send a message" argument constitutes reversible error. *Id.* at 238. First, the Court determines whether the argument is procedurally barred for lack of a contemporaneous objection. *Id.* Yet, even if the defense did not object at trial, this Court will review a claim when it involves an argument so inflammatory that the trial judge should have objected on his own motion. *Id.* Second, the Court examines whether the defense provoked the prosecution to make the statement. *Id.* After analyzing the threshold questions, this Court then determines 1) whether the remarks were improper, and 2) whether the remarks prejudiced the defendant's rights. *Id.*

¶95. Terrell did not object to the prosecutor's statement. However, the defense did not invite the statements, and the statements were improper. Regarding whether the statements were so inflammatory that the trial judge should have objected, as well as prejudice, it is noteworthy that the admissible evidence against Terrell certainly cannot be described as overwhelming, so it is possible that the prosecutor's statements influenced the jury. I believe that the prosecutor's statements are highly problematic. They encompass *both* a "send a message" argument that this Court has strongly condemned *and* a "do your job" argument that the United States Supreme Court has strongly condemned. *See **Payton v. State***, 785 So.

43

2d 267 (Miss. 1999) ("We have repeatedly condemned the 'send a message' argument and warned prosecutors accordingly.") ("[I]t is high time that the bench and bar take seriously our admonitions about such improprieties. Harmless error analysis should not be considered as a license to transgress the rules of fair argument that are repeatedly promulgated by this Court." (internal quotations omitted)) ("In the future, where sufficient evidence exists to show that a prosecutor is persistently ignoring our admonitions against use of the 'send a message' argument, we will not hesitate to sanction him with the costs of a new trial where necessary."); *Jackson*, 174 So. 2d 232 ("[P]rosecutors are now put on notice that such improper conduct is error. Because the State has now been warned, similar conduct by the prosecution is more likely to result in reversible error."); *United States v. Young*, 470 U.S. 1, 105 S. Ct. 1038, 84 L. Ed. 2d 1 (1985) ("do your job" arguments have "no place in the administration of criminal justice"); *Williams v. State*, 522 So. 2d 201 (Miss. 1988) ("The issue which each juror must resolve is not whether or not he or she wishes to 'send a message' but whether or not he or she believes that the evidence showed the defendant to be guilty of the crime charged. . . . When the prosecution wants to send a message they should employ Western Union. Mississippi jurors are not messenger boys."). This Court has cautioned time and time again that prosecutors using such inappropriate language will be reversed on appeal. Yet, this Court fails to follow through with its warnings, essentially giving prosecutors carte blanche to use inappropriate messages during closing argument.

¶96. For these reasons, I would reverse and render Terrell's timber theft conviction, and I would reverse and remand the remainder of his convictions for a new trial.[19]

**WALLER, C.J., AND KITCHENS, P.J., JOIN THIS OPINION.**

---

[19]I agree with the majority that Terrell may only be convicted of one conspiracy charge.